Warren M. EVANS, Petitioner,

v.

**PENNSYLVANIA BOARD OF
PROBATION AND PAROLE
(PBPP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 3, 2002.

Decided April 9, 2003.

As Amended April 25, 2003.

Warren Evans, petitioner, pro se.

Tara L. Patterson, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.[1]

Warren M. Evans (Petitioner) filed a petition for a writ of mandamus on his own behalf (Petition), which we will treat as a petition for review filed in this Court's original jurisdiction. He avers that, in denying him parole, the Pennsylvania Board of Probation and Parole (Board) deprived him of due process, and retroactively applied Section 9718.1 of the Judicial Code[2] to him in violation of the *Ex Post Facto* Clauses of the United States and Pennsylvania Constitutions. U.S. CONST. art. I, § 10; Pa. CONST. art. 1, § 17. The Board filed a preliminary objection in the nature of a demurrer, which is now before this Court for disposition.[3] For the reasons that follow, we sustain the preliminary objection of the Board.

Petitioner is an inmate at the State Correctional Institution at Coal Township, Pennsylvania, where he is currently serving a sentence of 10 years, 5 months to 40 years, 10 months,[4] for the offenses of robbery, involuntary deviate sexual intercourse[5] and possession of an instrument of crime.

Petitioner was paroled in 1991, following the expiration of his minimum sentence.[6] Among other requirements of his release, the Board imposed a special condition of parole requiring Petitioner to be evaluated to determine his need for mental health and sex offender treatment. Petitioner's

---

1. This case was reassigned to Judge Leavitt on September 10, 2002.

2. 42 Pa.C.S. § 9718.1. Section 3 of the Act of December 20, 2000 (Act 2000–98), P.L. 721, amended Chapter 97 of Title 42 of Pennsylvania's Consolidated Statutes by adding Section 9718.1; Chapter 97 is commonly known as the Sentencing Code. The text of Section 3 can be found in the historical and statutory notes to Purdon's version of 42 Pa.C.S.A. § 9718.1. Section 9718.1 provides that persons incarcerated in a state institution for enumerated sexual offenses involving minors *will not be eligible* for parole unless they have participated in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders.

3. In our original jurisdiction, an action in mandamus must define the issues, and every act or performance essential to that act must be set forth in the complaint. *See* Pa. R.C.P. No. 1019. In ruling upon a preliminary objection in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deductible therefrom. *Myers v. Ridge*, 712 A.2d 791, 794 (Pa.Cmwlth.1998). We need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. *Id.* The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief. *Id.*

4. Because Petitioner was sentenced to a term exceeding two years, the Board has exclusive jurisdiction over parole decisions. Section 17 of the Act commonly known as the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. § 331.17.

5. The pleadings do not indicate whether Petitioner's victims were minors under the age of 18, as contemplated by Act 2000–98.

6. Petitioner's minimum sentence expired on August 23, 1991; his maximum term of expiry is January 23, 2022.

Brief, Ex. B. In 1995, Petitioner violated parole conditions prohibiting his use of drugs and requiring him to submit to urinalysis. As a result, he was recommitted as a technical parole violator to serve fifteen months backtime. Petitioner's Brief, Ex. D. The recommitment decision advised Petitioner that while confined, he must comply with the institution's prescriptive program, have no misconducts and must participate in a sex offender treatment program.[7] *Id.*

Petitioner applied for parole in 1997, 1998, 1999, and 2000. Each time the Board denied him parole. In January 1997, the Board refused to release Petitioner on parole because of "substance abuse," "assaultive instant offense," "very high assaultive behavior potential," "victim injury," "weapon involved in the commission of offense," "failure to participate in and benefit from a treatment program for sex offenders," and an "unfavorable recommendation from the Department of Corrections." Petitioner's Brief, Ex. E. The Board stated that, prior to his next parole review in January 1998, Petitioner "must participate in [a] prescriptive program plan including [a] sex offender program," "must maintain a clear conduct record" and "must earn an institutional recommendation for parole." *Id.*

In February 1998, the Board refused to release Petitioner on parole because of "substance abuse," "assaultive instant offense," "very high assaultive behavior potential," "victim injury," "weapon involved in the commission of offense," "failure to participate in and benefit from a treatment program for sex offenders," and an "unfavorable recommendation from the Department of Corrections." Petitioner's Brief, Ex. F. The Board stated that, prior to his

next parole review in January 1999, Petitioner "must participate in [a] prescriptive program plan," "must maintain a clear conduct record" and "must earn an institutional recommendation for parole." *Id.*

In January 1999, the Board refused to release Petitioner on parole because "the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole." Petitioner's Brief, Ex. G. The Board informed Petitioner that at the next review in or after January 2000, it would consider "whether you have successfully completed a treatment program for sex offenders," "whether you have received a favorable recommendation for parole from the Department of Corrections" and "whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s)." *Id.*

In February 2000, the Board refused to release Petitioner on parole because "the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole." Petitioner's Brief, Ex. H. The Board informed Petitioner that at the next review in or after January 2001, it would consider "whether you have successfully completed a treatment program for sex offenders and substance abuse," "whether you have received a favorable recommendation for parole from the Department of Corrections" and "whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s)." *Id.* The Board further stated that "your written version of your crimes and sex offender evaluation addressing prior sex offenses (at least 3 arrests with one conviction),

---

**7.** Petitioner's arrest report indicated that he was dismissed from a mental health center after only two treatments because he was uncooperative, denied having difficulty with women and refused to discuss issues surrounding his conviction.

arousals, triggers, red flags, coping strategies and ongoing treatment needs to be available at [the] time of review." *Id.*

On December 20, 2000, Act 2000–98 was signed into law and became effective immediately. Section 3 provides:

(1) The amendment of 18 Pa.C.S. §§ 2902, 2903 and 5903(h)(2) and *the addition of 42 Pa.C.S. § 9718.1 shall apply to offenses committed on or after the effective date of this act.*

(2) *The addition of 42 Pa.C.S. § 9718.1 shall not preclude consideration of the factors set forth in that section in granting or denying parole for offenses committed before the effective date of this act,* except to the extent that consideration of such factors is precluded by the Constitution of the United States or the Constitution of the Commonwealth of Pennsylvania.

Act of December 20, 2000, P.L. 721, No. 2000–98 (emphasis added). *See also* H.B. 47, 184th Gen. Assem., 1999 Reg. Sess. (Pa.2000).

In January 2001, the Board refused to release Petitioner on parole for the fifth time, stating that "the fair administration of justice cannot be achieved through your release on parole." Petitioner's Brief, Ex. I. The Board informed Petitioner that at the next review in or after March 2002, it would consider "whether you have participated in a treatment program for: sex offenders," "whether you have maintained a favorable recommendation for parole from the Department of Corrections" and "whether you have maintained a clear conduct record and completed the Department of Corrections' prescriptive programs." *Id.* The Board further stated that "status and disposition, as available, of your pending appeal process and sex offender assessment to be available at [the] time of review." *Id.*

In November 2001, Petitioner filed the Petition, alleging that the Board deprived him of due process by: (1) considering factors that are unrelated to the technical parole violations for which he was recommitted; (2) denying him parole based upon the information considered by the sentencing court in fashioning his "original sentence"; (3) requiring a favorable recommendation from the Department of Corrections; and (4) denying him parole based upon his failure to participate in programs "that have clearly been established as voluntary." Petition at 3–7. Petitioner also alleges that the Board retroactively applied Section 9718.1 of the Sentencing Code to him in violation of the *Ex Post Facto* Clauses of the United States and Pennsylvania Constitutions. Petitioner seeks an order mandating that the Board schedule a new parole interview and consider only those factors that do not violate his constitutional rights. Petitioner's Brief at 23.

The Board filed a preliminary objection in the nature of a demurrer, asserting that it consistently employed the appropriate statutory factors in Petitioner's parole reviews and that Petitioner presented no affirmative evidence to the contrary. Specifically, the Board argues that: (1) Petitioner has not stated an *ex post facto* claim because the Board did not condition Petitioner's eligibility for parole on his participation in a sex offender treatment program; (2) Petitioner has not stated a due process violation because he does not have a liberty interest in the expectation of release on parole prior to the expiration of his maximum sentence; and (3) mandamus is improper because the denial of parole is a matter solely within the Board's discretion. We will address these arguments *seriatim.*

I. *EX POST FACTO* CLAIM

The Board demurs, first, to Petitioner's claim that his rights under the *Ex Post*

*Facto* Clause of the United States Constitution and of the Pennsylvania Constitution were violated. We agree that the Petition does not state an *ex post facto* claim.

■ In both the civil and criminal context, the *Ex Post Facto* Clause of the United States Constitution places limits on the "sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects." *Lynce v. Mathis,* 519 U.S. 433, 440, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). A criminal law that transforms an act, which was innocent when committed, into a criminal one and then punishes such action violates the *ex post facto* prohibition. *Commonwealth v. Young,* 536 Pa. 57, 66, 637 A.2d 1313, 1317 (1993). This means that a law that aggravates a crime, inflicts greater punishment or that changes the rules of evidence in favor of the State will be found unconstitutional. *Id.* Although parole is a matter of grace, our Supreme Court has directed that where the Board increases a penalty by applying a new law this can trigger the *ex post facto* prohibition. *Coady v. Vaughn,* 564 Pa. 604, 608–609, 770 A.2d 287, 289–290 (2001).

Here, Petitioner asserts that the Board has applied Act 2000–98 to him in violation of the *Ex Post Facto* Clause in the Consti-

tutions of the United States [8] and of Pennsylvania.[9] Our Supreme Court has explained that the *ex post facto* clauses of both constitutions are virtually identical, and the standards applied to determine an *ex post facto* violation are comparable. *Young,* 536 Pa. at 65, 637 A.2d at 1317 n. 7. Accordingly, the analysis of Petitioner's federal *ex post facto* claim disposes of his state claim as well.

■ The principles for evaluating a change in the parole laws against the federal *ex post facto* prohibition have been refined in two recent cases: *California Department of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) and *Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).[10] They establish that the controlling inquiry is whether retroactive application of a law creates a sufficient risk of increasing the measure of punishment for a crime. *Morales,* 514 U.S. at 509, 115 S.Ct. 1597. The increase in punishment will not be shown by conjecture or by attenuated possibility. *Id.*

In *Morales,* the Supreme Court considered a California statute that allowed the parole board to decrease the frequency of parole suitability hearings for prisoners convicted of more than one homicide. At the time of his 1980 conviction for the

---

8. The United States Constitution provides:
 No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility. U.S. CONST. art. I, § 10, cl. 1.

9. The Pennsylvania Constitution provides:
 No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.

PA. CONST. art. 1, § 17.

10. *See also, Winklespecht v. Pennsylvania Board of Probation and Parole,* 571 Pa. 685, 813 A.2d 688 (2002), in which our Supreme Court applied *Morales* and *Garner* in considering whether a 1996 amendment to the Parole Act violated the *Ex Post Facto* Clause. It held that the 1996 amendment did not change Pennsylvania's policy as to the criteria for parole, "nor did the addition of this [new] language create a new offense or increase the penalty for an existing offense." *Id.* at 691, 813 A.2d at 692.

murder of his wife, his second conviction for murder, Morales was entitled to an annual parole hearing. In 1981, the California Legislature amended its statute to give the parole board discretion to delay a parole hearing for up to three years, in the case of a multiple murderer. Morales claimed that the statute's application to him violated the *ex post facto* prohibition; the Supreme Court held in favor of the State of California. In doing so, the Court reasoned that the statutory amendment applied only to a class of prisoners for whom the likelihood of release on parole was quite remote; the amendment did not alter the timing of any prisoner's *initial* parole suitability hearing and affected the scheduling of a subsequent hearing only where the parole board specifically found it unreasonable to expect parole during the interval; and that, in any case, the parole board retained the authority to schedule more frequent parole hearings where appropriate in an individual case. *Id.* at 510–511, 115 S.Ct. 1597. Thus, the Supreme Court found that the statute in question created only the most speculative and attenuated possibility of increasing the severity of Morales' punishment and was not, therefore, unconstitutional. *Morales,* 514 U.S. at 509, 115 S.Ct. 1597.

In *Garner,* the Supreme Court considered an amendment to Georgia's parole rules [11] that extended the interval between parole reconsideration hearings for inmates serving life sentences from three years to eight years. The Court found that this rule change was not invalid on its face because the parole board retained discretion as to how often to set an inmate's date for reconsideration, with eight years being the maximum. Further, the Georgia rules permitted expedited parole reviews to consider a change in circumstances or new information. *Garner,* 529 U.S. at 254, 120 S.Ct. 1362. The Court remanded the case for consideration of whether, as applied to petitioner's sentence, the amendment created a significant risk of increasing his punishment. *Id.* at 255–257, 120 S.Ct. 1362.

By way of contrast, a Florida statute that retroactively cancelled provisional early release credits was found unconstitutional. *Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). In that case, Lynce, who had been released on the basis of his credits, was arrested and returned to custody because of the state attorney general's opinion that his release had been improper under the new statute. The obvious increase in punishment persuaded the Court that the statute violated the *Ex Post Facto* Clause of the United States Constitution.

In sum, to prevail in this case, Petitioner must prove, first, that Act 2000–98 [12] was,

11. These rules were adopted by the Georgia Parole Board pursuant to statute authorizing the adoption of rules for reconsideration of parole denial. *Garner,* 529 U.S. at 247, 120 S.Ct. 1362.

12. Act 2000–98 provides in relevant part as follows:

(a) General rule.—A person, including an offender designated as a "sexually violent predator" as defined in section 9792 (relating to definitions), shall attend and participate in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders if the person is incarcerated in a State institution for any of the following provisions under 18 Pa.C.S. (relating to crimes and offenses):

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses), if the offense involved a minor under 18 years of age.

(2) Section 4304 (relating to endangering welfare of children), if the offense involved sexual contact with the victim.

(3) Section 6301 (relating to corruption of minors), if the offense involved sexual contact with the victim.

(4) Open lewdness, as defined in section 5901 (relating to open lewdness), if the

in fact, applied to him. Next, Petitioner must prove that Act 2000–98, on its face or as applied to him, creates a significant risk of increasing the severity of his punishment. For the reasons that follow, Petitioner cannot meet this burden.

■ Although Petitioner asserts that Act 2000–98 was applied to him, his Petition fails to set forth essential elements of his claim. First, neither the Petition nor the record indicates whether the victims of Petitioner's crimes were minors under the age of 18, as contemplated by Act 2000–98. Further, Petitioner's last parole denial letter does not refer to Act 2000–98 nor does it use its language. Finally, Act 2000–98 provides that persons incarcerated in a state institution for enumerated sexual offenses involving minors *will not be eligible* for parole unless they have participated in a Department of Corrections program of counseling or therapy designed for incarcerated sex offenders. 42 Pa.C.S.

§ 9718.1. Here, Petitioner was never rendered ineligible for parole; rather, he was deemed eligible and was interviewed for reparole *five* times (four of which were prior to the passage of Act 2000–98) regardless of his participation in a counseling or therapy program for sex offenders. Accordingly, Petitioner has not averred facts sufficient to establish that Act 2000–98 played any role in the Board's determination.

■ Assuming, *arguendo,* that Act 2000–98 was retroactively applied to Petitioner, the Act does not, on its face, violate the *Ex Post Facto* Clause. Section 3 of Act 2000–98 [13] clearly provides that its mandatory provisions only "apply to offenses committed on or after the effective date of this act." 42 Pa.C.S. § 9718.1. Section 3 also permits, but does not require, consideration of the Act's factors "in granting or denying parole for offenses committed before the effective date of this

offense involved a minor under 18 years of age.

(5) Prostitution, as defined in section 5902 (relating to prostitution and related offenses), if the offense involved a minor under 18 years of age.

(6) Obscene and other sexual materials and performances, as defined in section 5903 (relating to obscene and other sexual materials and performances), if the offense involved a minor under 18 years of age.

(7) Sexual abuse of children, as defined in section 6312 (relating to sexual abuse of children).

(8) Section 6318 (relating to unlawful contact or communication with minor).

(9) Section 6320 (relating to sexual exploitation of children).

(10) Section 4302 (relating to incest) if the offense involved a minor under 18 years of age.

(11) An attempt or solicitation to commit any of the offenses listed in this subsection.

(b) Eligibility for parole.—For an offender required to participate in the program un-

der subsection (a), all of the following apply:

(1) *The offender shall not be eligible for parole unless the offender has:*
 (i) served the minimum term of imprisonment;
 (ii) *participated in the program under subsection* (a); and
 (iii) agreed to comply with any special conditions of parole imposed for therapy or counseling for sex offenders, including sexually violent predators.

(2) Notwithstanding paragraph (1)(iii), an offender who is a sexually violent predator is subject to section 9799.4(b) (relating to counseling of sexually violent predators).

(c) Department.—The department shall develop and provide the program of counseling or therapy for offenders as provided in subsection (a). The department shall have the sole discretion with respect to counseling or therapy program contents and administration, including the scheduling of an offender's attendance and participation.

42 Pa.C.S. § 9718.1 (emphasis added).

**13.** The text of Section 3 of Act 2000–98 is set forth above in the text of the opinion.

act...." *Id.* Thus, the Board retains discretion to consider whether a state prison inmate who committed a sexual offense involving a minor before Act 2000–98 was passed should receive sex offenders' treatment. Under *Morales* and *Garner*, this retention of the Board's discretion bars a finding that the statute, on its face, violates the *ex post facto* prohibition.

Again, assuming, *arguendo*, that Act 2000–98 was applied to Petitioner by the Board, we cannot conclude that its retroactive application creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Morales*, 514 U.S. at 509, 115 S.Ct. 1597. Without allegations to show how the retroactive application of Act 2000–98 increases, to a significant degree, the likelihood or probability of prolonging Petitioner's incarceration, his claim rests upon nothing more than mere speculation. Speculation cannot support an *ex post facto* claim. *Morales*, 514 U.S. at 509, 115 S.Ct. 1597.

■ Act 2000–98 is not a penal statute; it does not "punish." Under our Pennsylvania Supreme Court's decision in *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999), a legislative measure will be considered penal where: (1) the legislature's actual purpose is punishment; (2) the objective purpose is punishment; or (3) the effect of the statute is so harsh that "as a matter of degree" it constitutes punishment. *Id.* at 331, 733 A.2d at 618. Under this test, Act 2000–98 cannot be construed as a penal statute.

First, the stated, actual purpose of Act 2000–98 is the protection of the public. As set forth in the Act, the General Assembly declared:

> It is the intent of the General Assembly to protect our most vulnerable and precious citizens, the Commonwealth's children, from the ravages of sexual abuse. Because sexual crimes committed against children are among the most heinous imaginable, the General Assembly declares it to be in the public interest to enact this act.

H.B. 47, 184th Gen. Assem., 1999 Reg. Sess. (Pa.2000). Requiring those persons incarcerated in a state institution for enumerated sexual offenses involving minors to participate in a treatment program was not intended as retribution, but rather to protect the public. This is a rational approach to reducing the serious danger that repeat sex offenders pose to the citizens of the Commonwealth, including our children.[14]

Similarly, the objective purpose of the statute is non-punitive. Act 2000–98 protects vulnerable citizens and assists reha-

---

14. We observe that other courts have arrived at similar conclusions regarding sex offender statutes. *McKune v. Lile*, 536 U.S. 24, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (finding that Kansas state department of corrections rehabilitation program requiring convicted sex offender inmates to complete and sign an "Admission of Responsibility" form and complete a sexual history form detailing all prior sexual activities or lose privileges or be transferred to a maximum security prison, did not violate inmates' rights against self-incrimination); *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (holding that the Kansas Sexually Violent Predator Act which establishes procedures for the involuntary civil commitment following criminal confinement of persons who, due to mental abnormality or a personality disorder, are likely to engage in predatory acts of sexual violence, was not punitive and, therefore, did not violate either the Double Jeopardy or *Ex Post Facto* Clause of the United States Constitution); *State v. Carpenter*, 197 Wis.2d 252, 541 N.W.2d 105 (1995) (finding that Wisconsin statute establishing a civil commitment procedure primarily intended to protect the public and provide concentrated treatment to convicted sexually violent persons does not violate either the *Ex Post Facto* or Double Jeopardy Clauses of the Wisconsin or United States Constitutions).

bilitated offenders to reenter society. This rehabilitative purpose is consistent with the Commonwealth's public policy to provide the opportunity for the offender to become a useful member of society. Act 2000–98 ensures that those to be paroled are provided needed treatment so they do not commit other similar crimes. Rehabilitation is a legitimate, non-punitive, objective of our penal system.

■ Finally, Act 2000–98 is not so harsh in effect as to constitute punishment. Because it provides treatment to an offender, Act 2000–98 facilitates early release of such offenders into the community. Parole prior to the expiration of his maximum sentence is an act of executive grace to which an inmate has no entitlement. *Presley v. Pennsylvania Board of Probation & Parole,* 748 A.2d 791, 794 (Pa. Cmwlth.2000). Successful treatment can only be a positive factor for an inmate seeking early release.

Parole can only be granted by the Board when it appears that the interests of the Commonwealth will not be injured. Section 21 of the Parole Act, Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. § 331.21. It is therefore prudent to ensure that sex offenders are able to function appropriately when they reenter society. To enable rehabilitation, sex offender treatment is made available. To encourage offenders to avail themselves of the opportunity for treatment, early release through parole is used as an incentive. An offender who declines treatment is subjected to no greater burden than that imposed by the sentencing judge. However, an offender who accepts treatment may qualify for release before his maximum date.

This result is not so harsh as to constitute punishment.

Petitioner has not pleaded facts to show that Act 2000–98 figured into the Board's decision not to release him. However, Act 2000–98, on its face or as applied, does not create a significant risk of increasing the severity of his punishment. We hold, therefore, that the Petition fails to state a claim under the *Ex Post Facto* Clause of the Constitution of the United States or of Pennsylvania.

## II. DUE PROCESS CLAIM

■ The Board next argues that the Petition does not state a due process violation [15] because Petitioner does not have a liberty interest in the expectation of release on parole prior to the expiration of his maximum sentence. We agree.

■ As this Court has previously stated, "parole is nothing more than a possibility, and if granted, it merely constitutes a favor given by the state, as a matter of grace and mercy, to a prisoner who has demonstrated a probability of his or her ability to function as a law-abiding citizen in society." *Mickens–Thomas v. Board of Probation & Parole,* 699 A.2d 792, 796 (Pa.Cmwlth.1997) (citing *Weaver v. Pennsylvania Board of Probation & Parole,* 688 A.2d 766 (Pa.Cmwlth.1997)). Accordingly, a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his maximum term of sentence. *See, e.g., Krantz v. Pennsylvania Board of Probation & Parole,* 86 Pa. Cmwlth. 38, 483 A.2d 1044, 1047 (1984); *Mickens–Thomas,* 699 A.2d at 796.

**15.** Petitioner has due process rights under the Constitutions of the United States and Pennsylvania. Art. I Section 9 of the Pennsylvania Constitution has been construed as the func-

tional equivalent of the due process provision in the United States Constitution. *Commonwealth v. Kratsas,* 564 Pa. 36, 49, 764 A.2d 20, 27, n. 5 (2001).

However, Petitioner contends that the Board deprived him of due process because it considered factors that are unrelated to the technical parole violations for which he was recommitted; it denied him parole based upon the information considered by the sentencing court in fashioning his "original sentence"; it required a favorable recommendation from the Department of Corrections; and it considered his failure to participate in programs that are voluntary, not mandatory. These claims lack merit.

In fact, the Board is *statutorily required* under Section 19 of the Parole Act, 61 P.S. § 331.19, to consider such factors.[16] Moreover, it is prudent for the Board to consider the nature of the offense and other information used by the trial court to sentence Petitioner. Contrary to Petitioner's argument, such considerations do not affect the original term of the sentence, but merely help the Board carry out its statutory duties to protect the public and ensure that an individual is sufficiently rehabilitated before he reenters society. These considerations are even more important in the context of the individual who has been paroled, and is recommitted either as a technical parole violator or a convicted parole violator. That individual has proven that he was not sufficiently rehabilitated to reenter society and follow its rules.

Accordingly, we hold that the Petition fails to state a claim that the Petitioner's due process rights were violated.[17]

### III. MANDAMUS

 Finally, the Board argues that mandamus does not lie to challenge the Board's denial of parole because the denial of parole is a matter solely within the Board's discretion.

 A writ of mandamus is an extraordinary remedy designed to compel official performance of a ministerial act or mandatory duty. *McGill v. Pennsylvania Department of Health, Office of Drug and Alcohol Programs,* 758 A.2d 268, 270 (Pa. Cmwlth.2000). Thus, in an action in mandamus involving an administrative agency's exercise of discretion, we may only

**16.** Section 19 of the Parole Act states:
It shall be the duty of the board, upon the commitment to prison of any person whom said board is herein given the power to parole, to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner, participation by a prisoner who is serving a sentence for a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by the Department of Corrections and the written or personal statement of the testimony of the victim or the victim's family submitted pursuant to section 22.1 of this act. The board shall further consider the notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available. The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, his history of family violence and his complete criminal record, as far as the same may be known, to be reported and investigated. All public officials having possession of such records or information are hereby required and directed to furnish the same to the board upon its request and without charge therefor so far as may be practicable while the case is recent. 61 P.S. § 331.19.

**17.** The dissent notes that the Board's decision fails to state the reasons for denial with the specificity required by *Voss v. Pennsylvania Board of Probation and Parole,* 788 A.2d 1107, 1111 (Pa.Cmwlth.2001). This issue was not raised in the Petition · and is, therefore, waived.

direct the agency to perform the discretionary act; we may not direct the agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken. *Id.* A writ of mandamus may be issued only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and lack of any other appropriate and adequate remedy. *Id.* The purpose of mandamus is not to establish legal rights, but to enforce those rights already established. *Id.*

Because we have concluded that Section 9718.1 of the Judicial Code does not violate the prohibition against *ex post facto* laws, and that the granting of parole is a purely discretionary act which the Board appropriately exercised when it denied Petitioner parole, Petitioner may not avail himself of this extraordinary remedy.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the application of Act 2000–98 to a sex offender sentenced prior to its effective date does not violate the *Ex Post Facto* Clauses of the United States and Pennsylvania Constitutions. Likewise, we find no due process violation by the Board in considering statutorily mandated factors or those employed in its discretion, to determine whether Petitioner should be granted parole. The Petition sets forth argumentative conclusions and expressions of unsupportable opinions, which are not legally sufficient to permit the action to continue.

Accordingly, the Board's preliminary objection in the nature of a demurrer is granted, and the Petition is dismissed with prejudice.

---

1. In his Petition, Evans seeks an order mandating that the PBPP schedule a new parole interview and consider only those factors that

*ORDER*

AND NOW, this 9th day of April, 2003, the preliminary objection in the nature of a demurrer filed by Respondent is sustained and the petition for review is dismissed with prejudice.

DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. Unlike the majority, I would overrule the preliminary objection in the nature of a demurrer filed by the Pennsylvania Board of Probation and Parole (PBPP) in response to the Petition for Writ of Mandamus (Petition) filed by Warren M. Evans (Evans).[1]

In ruling upon a preliminary objection in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deducible therefrom. *Myers v. Ridge,* 712 A.2d 791 (Pa.Cmwlth.1998), *appeal denied,* 560 Pa. 677, 742 A.2d 173 (1999). A demurrer should be sustained only in a case that clearly and without a doubt fails to state a claim upon which relief may be granted. *Sunbeam Corporation v. Liberty Mutual Insurance Company,* 566 Pa. 494, 781 A.2d 1189 (2001). The likelihood of proving the factual allegations is irrelevant; a demurrer must be rejected if the facts as pleaded state a claim for which relief may be granted under any theory of law. *Id.*

### I. Mandamus and Discretion

The PBPP first argues that mandamus does not lie to challenge the PBPP's denial of parole because the denial of parole is a matter solely within the PBPP's discretion. Although the majority accepts this argument, (majority op. at 914–15), I submit

---

do not violate his due process and *ex post facto* rights.

that this position is contrary to the case law of this court and the Pennsylvania Supreme Court.

Mandamus will not lie to compel performance of a discretionary act, *except* where the prior exercise of discretion was arbitrary, fraudulent or based upon a mistaken view of the law. *County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985); *Commonwealth ex rel. Lindsley v. Robinson,* 30 Pa.Cmwlth. 96, 372 A.2d 1258 (1977). With respect to parole decisions in particular, our supreme court has stated that a prisoner may be entitled to pursue allegations of constitutional violations against the PBPP through a writ of mandamus. *Rogers v. Pennsylvania Board of Probation and Parole,* 555 Pa. 285, 724 A.2d 319 (1999). Moreover, this court has stated that mandamus is available to compel the PBPP to correct a mistake in applying the law. *Reider v. Pennsylvania Board of Probation and Parole,* 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986). The majority completely ignores these rules of law governing mandamus.

Here, Evans alleges that the PBPP's denial of parole was arbitrary and based upon the PBPP's mistaken view of the law governing the due process and *ex post facto* clauses. Therefore, mandamus lies here to compel the PBPP to exercise its discretion in a manner that is *not* arbitrary and *not* based on a mistaken view of the law. Indeed, Evans seeks an order compelling the PBPP to schedule a new parole interview and issue a parole decision without considering those factors that violate his due process and *ex post facto* rights.[2] Accordingly, I would overrule the PBPP's preliminary objection.

## II. Due Process

The PBPP also argues that the Petition does not state a due process violation because Evans does not have a liberty interest in the expectation of release on parole prior to the expiration of his maximum term. I disagree that the Petition fails to state a due process violation.

### A. Reasons for Denial of Parole

The Petition indicates that, in 2001, the PBPP denied Evans parole because the fair administration of justice cannot be achieved through his release on parole. In *Voss v. Pennsylvania Board of Probation and Parole,* 788 A.2d 1107, 1111 (Pa. Cmwlth.2001) (emphasis added, footnote omitted), this court stated:

> The Court agrees that the law is well settled that the [PBPP] has broad discretion in making parole decisions.

---

**2.** I note that our supreme court has held that a prisoner can raise an *ex post facto* challenge to the denial of parole by filing a petition in mandamus in this court's original jurisdiction. *See Coady v. Vaughn,* 564 Pa. 604, 770 A.2d 287 (2001). In *Coady,* the court stated:

> Thus, mandamus will not lie where the substance of the [PBPP's] discretionary action is the subject of the challenge. Where, however, discretionary actions and criteria are not being contested but rather the actions of the [PBPP] taken pursuant to changed statutory requirements are being challenged, an action for mandamus remains viable as a means for examining whether statutory requirements have been altered in a manner that violates the *ex post*

*facto* clause. Such an action could be brought in the original jurisdiction of the Commonwealth Court. Absent a change in the statutes governing parole, however, denial of parole would generally constitute a discretionary matter that is not subject to review.

*Id.* at 608–09, 770 A.2d at 290 (footnote omitted). Here, Evans alleges that the PBPP acted pursuant to changed statutory requirements by retroactively applying section 9718.1 of the Sentencing Code. Thus, Evans properly filed a mandamus action in this court's original jurisdiction to determine whether the statutory requirements for the parole of sex offenders have been altered in a manner that violates the *ex post facto* clause.

However, it does not follow that the [PBPP] has no corresponding *duty to consider and to act upon parole applications according to specifically articulated statutory standards*. Essentially, the Court is not persuaded that the [PBPP's] denial of ... parole ... based upon an "achieving the fair administration of justice" concept meets the requirements of *due process*. [An inmate] has a clear *right to receive a statement of the reasons for the denial of his parole application*, particularly if the record demonstrates as he asserts that he met all previous requirements for parole imposed upon him by the [PBPP].

Indeed, absent a clear statement of the reasons for the denial of parole, it would be impossible to determine whether the PBPP denied parole for an arbitrary or constitutionally impermissible reason.[3] Here, because the Petition shows that the PBPP failed to provide a clear statement of the reasons for denying Evans parole, the Petition states a substantive due process violation. *Id.*

### B. Notice of Considerations

Although the PBPP did not give a clear statement of the reasons for denying Evans parole, the PBPP gave Evans notice in its decisions that, in determining a future grant of parole, the PBPP would consider whether Evans (1) completed a sex offender treatment program, (2) maintained a favorable recommendation for parole by the Department of Corrections, and (3)

maintained a clear conduct record. However, in 2001, the PBPP stated that it denied Evans parole because the fair administration of justice could not be achieved by Evans' release on parole. There is *no* indication that the PBPP based the denial of parole on the specific considerations stated in the PBPP's decision. I am not persuaded that the PBPP's practice of giving Evans notice of specific parole considerations, which the PBPP then apparently does *not* consider, and certainly does not address, in denying Evans parole, meets the requirements of substantive due process.

### C. Arbitrary Decision

If the PBPP actually had considered whether Evans (1) completed a sex offender treatment program, (2) maintained a favorable recommendation for parole by the Department of Corrections, and (3) maintained a clear conduct record, I see no reason why the PBPP would not have released Evans on parole.

By 2001, Evans had completed *three* different sex offender treatment programs. Moreover, Evans had a favorable recommendation for parole by the Department of Corrections and a clear conduct record.[4] In addition, although the PBPP denied Evans parole in 2000 because of its concern for the safety of the public, the PBPP did *not* mention public safety as a reason for the denial of parole in 2001. Thus, in 2001, the PBPP effectively conceded that Evans no longer represents a threat to

---

**3.** *See Block v. Potter,* 631 F.2d 233, 236 (3d Cir.1980) (stating, "[o]nce a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons.")

**4.** In 2001, the PBPP stated that Evans must "maintain" a favorable recommendation for parole from the Department of Corrections and a clear conduct record. The word

"maintain" means to "continue." *See* Webster's Third New International Dictionary 1362 (1993). Thus, I reasonably infer that, in 2001, Evans had a favorable recommendation and a clear conduct record. This reading of the Petition is consistent with Evans' statement in his brief that he has a favorable recommendation for parole. (Evans' brief at 3.)

public safety. Where Evans satisfied every consideration for parole in 2001 and was *not* a threat to public safety, the PBPP's denial of parole in 2001 was an arbitrary decision and, therefore, a violation of Evans' substantive due process rights.[5] Accordingly, I would overrule the PBPP's preliminary objection.

### D. Majority Position

The majority concludes that Evans does not have a liberty interest in the expectation of release on parole prior to the expiration of his maximum sentence. However, in *Voss* and in *Boyd v. Ward*, 802 A.2d 705 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 813 A.2d 844 (2002), this court held that the PBPP's decision denying parole must meet the requirements of due process. In other words, Evans *does* have a liberty interest in the expectation of being *considered* for parole in a manner that complies with the requirements of due process.

I suggest that the starting point for determining whether a liberty interest exists in a parole denial case is the relief requested in the mandamus petition. If the prisoner requests release on parole, it would be proper to dismiss the petition because there is no liberty interest in release on parole prior to the expiration of the maximum sentence. However, if the prisoner requests a parole decision that complies with due process requirements, this court must acknowledge that there is a liberty interest in such relief. Here, Evans does *not* request release on parole; therefore, it is *not* proper to consider whether there is a liberty interest in release on parole prior to the expiration of Evans' maximum term. Rather, Evans requests a parole decision that complies with due process requirements, in which case Evans *has* a liberty interest.

### III. *Ex Post Facto*

Finally, the PBPP objects that the Petition does not state a violation of the *ex post facto* clause because the PBPP did not condition Evans' eligibility for parole, i.e., his opportunity for parole review, on successful completion of a sex offender program. I disagree.

The U.S. Supreme Court has stated that changes in the laws governing the parole of prisoners, when applied retroactively, may violate the *ex post facto* clause of the U.S. Constitution. *Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).[6] The Court indicated that it is a particularly difficult question when one takes into account the discretion vested in a parole board.[7] *Id.* However, the presence of discretion does not displace the protections of the *ex post facto* clause. *Id.* "The danger that legislatures might disfavor certain persons after the fact is present even in the parole context, and the

> [W]here parole is concerned[,] discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

---

5. Indeed, it appears that the PBPP's list of considerations is a sham, and the real reason the PBPP denied Evans parole is that he is a sex offender.

6. I note that U.S. Supreme Court decisions on federal constitutional issues are binding precedent on Pennsylvania courts. *See Haller v. Department of Revenue*, 556 Pa. 289, 728 A.2d 351 (1999).

7. In *Garner*, 529 U.S. at 253, 120 S.Ct. 1362, the U.S. Supreme Court made the following statement about a parole board's discretion:

Court has stated that the *Ex Post Facto* Clause guards against such abuse." *Id.* at 253, 120 S.Ct. 1362.

The controlling inquiry is whether the retroactive application of the change created a " 'sufficient risk of increasing the measure of punishment attached to the covered crimes.' " *Id.* at 250, 120 S.Ct. 1362 (quoting *California Department of Corrections v. Morales*, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)). "When the [law] does not by its own terms show a significant risk, the [prisoner] must demonstrate, by evidence drawn from the [law's] practical implementation by the agency charged with exercising discretion, that its retroactive application will result in *a longer period of incarceration* than under the earlier [law]." *Id.* at 255, 120 S.Ct. 1362 (emphasis added). In determining whether a parole board's new policies and practices result in a longer period of incarceration, a court will consider the parole board's internal policy. *Id.* "It is often the case that an agency's policies and practices will indicate the manner in which it is exercising its discretion." *Id.* at 256, 120 S.Ct. 1362.

### A. Section 9718.1 of the Sentencing Code

Section 9718.1(a) of the Sentencing Code provides that a sex offender shall attend and participate in a Department of Corrections sex offender treatment program. 42 Pa.C.S. § 9718.1(a). Moreover, the sex offender shall not be "eligible for parole" until the person (1) has served the minimum term of imprisonment, (2) has participated in a Department of Corrections sex offender treatment program, and (3) has agreed to comply with any special condition of parole requiring therapy or counseling for sex offenders. Section 9718.1(b) of the Sentencing Code, 42 Pa. C.S. § 9718.1(b). Section 3(1) of Act 2000–

98, which added section 9718.1 to the Sentencing Code, states that section 9718.1 applies only to offenses committed on or after December 20, 2000.

Section 3(2) of Act 2000–98 states that the addition of section 9718.1 to the Sentencing Code shall not prevent the PBPP from considering participation in a sex offender program in the granting or denying of parole for offenses committed before December 20, 2000, *except to the extent that such consideration violates the U.S. Constitution or Pennsylvania Constitution.* In other words, the legislature recognized that the PBPP would violate the *ex post facto* clause if the PBPP's consideration of participation in sex offender treatment in the parole review process is, in reality, the retroactive application of section 9718.1 to sex offenders who committed their offenses before December 20, 2000.

Evans committed his sex offense before December 20, 2000; thus, section 9718.1 of the Sentencing Code does not apply to him. Indeed, the PBPP released Evans on parole in 1991 despite the fact that Evans had *not* attended or participated in a Department of Corrections sex offender treatment program. In 1991, the PBPP required only that Evans undergo an evaluation *after his release on parole* to determine the need for sex offender treatment. However, since Evans' recommitment, the PBPP has required Evans' participation in a Department of Corrections sex offender treatment program as a precondition for parole. Even after Evans completed three different programs, and there is no evidence that there are any other programs offered, the PBPP still is considering whether Evans participated in a sex offender treatment program.

Certainly, it appears that the PBPP is retroactively applying a change in the law to Evans.[8] To determine whether the

---

8. As stated, section 9718.1 of the Sentencing

Code states that sex offenders shall attend and

PBPP's application of section 9718.1 to Evans actually lengthens Evans' period of incarceration, we would need to know the PBPP's real reasons for denying Evans parole and the PBPP's internal policies relating to sex offenders. However, at this stage of the proceedings, there is no evidence relating to these matters. Therefore, I would not dismiss Evans' *ex post facto* claim based on section 9718.1. Instead, I would overrule the PBPP's preliminary objection to Evans' section 9718.1 *ex post facto* claim.

## B. Parole Criteria

In his brief, Evans argues that the PBPP also has violated the *ex post facto* clause by retroactively applying to him criteria established pursuant to the amendments to the Parole Act[9] that have occurred since his conviction. (Evans' brief at 14, 18.)

Section 21(a) of the Parole Act states that parole is appropriate whenever "the best interests of the convict justify or require his being paroled and it does not appear that the interests of the Commonwealth will be injured thereby." 61 P.S. § 331.21(a). In other words, under this provision, the PBPP's parole review process begins with the *best interests of the convict.* However, on December 18, 1996, the General Assembly amended section 1 of the Parole Act, the statute's public policy statement, to state that the PBPP "shall first and foremost seek to protect the safety of the public."[10] 61 P.S. § 331.1.

According to Evans, with this statutory shift in emphasis, the PBPP has established new and tougher criteria making it less likely for him to obtain parole. (Evans' brief at 18.) For example, with respect to sex offender treatment, when Evans was paroled in 1991, the PBPP stated, "Upon your release on parole, you will be evaluated to determine your need for mental health and sex offender treatment." (Evans' brief, Exh. B.) However, when the PBPP denied Evans parole on January 15, 1997, the PBPP stated that Evans *must* participate in a sex offender program. (Petition; Attachments.) In other words, the PBPP no longer requires an evaluation of the need for sex offender treatment *after* release on parole; the PBPP now requires treatment *before* release on parole.

The PBPP also refused to release Evans on parole in 1997 because of the nature of the offenses for which he was convicted. (Petition; Attachments.) However, the PBPP knew all of this when the PBPP *granted* Evans parole in 1991. The PBPP also knew that, despite the nature of his offense, Evans had been on parole, without incident, from 1991 until his technical violation for drug use in 1995. In other words, with the 1996 amendment to the Parole Act, emphasizing the safety of the public, the PBPP changed its criteria for release on parole and applied the new criteria retroactively to Evans. The result

participate in sex offender treatment programs, and, in 1991, the PBPP never considered that when it paroled Evans.

9. Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. §§ 331.1–331.34.

10. In *Winklespecht v. Pennsylvania Board of Probation and Parole,* 571 Pa. 685, 813 A.2d 688 (2002), our supreme court held that the rewording of section 1 did not violate the *ex*

*post facto* clause. However, the court did not address whether changes in PBPP guidelines violated the *ex post facto* clause because Winklespecht did not address the issue in his brief. *Id.; see also Mickens–Thomas v. Vaughn,* 321 F.3d 374 (3d Cir.2003) (stating that the Board construed the rewording of section 1 contrary to our supreme court's decision in *Winklespecht).*

is a longer period of incarceration for Evans, an *ex post facto* violation. *See Garner; see also Mickens–Thomas v. Vaughn,* 217 F.Supp.2d 570 (E.D.Pa.2002) (holding that the PBPP's retroactive application of changed parole guidelines constitutes an *ex post facto* violation), *aff'd,* 321 F.3d 374 (3d Cir.2003).

Accordingly, Evans has stated an additional *ex post facto* claim in his brief based on the PBPP's retroactive application of criteria established pursuant to the amendments to the Parole Act. Thus, I would grant Evans leave to amend his Petition to state such a claim. *See* Pa. R.C.P. No. 1033.

## C. Majority Position

The majority concludes that the Petition fails to state an *ex post facto* violation with respect to section 9718.1 of the Sentencing Code because Evans fails to allege that his victims were under the age of eighteen, as contemplated by section 9718.1. (Majority op. at 911.) However, we can reasonably infer this from Evans' allegation that the PBPP applied section 9718.1 in his case. Because we are at the preliminary objection stage of the proceedings, reasonable inferences are permissible. *Myers.*

The majority also points out that the PBPP's decision does not refer to section 9718.1 or use its language. (Majority op. at 911.) This is irrelevant. There is no law requiring the PBPP to cite statutory authority or use precise statutory language in its decisions denying parole. Nevertheless, the Board's decision may not be so vague that it fails to state clearly the reasons for the denial of parole. Moreover, to suggest that the PBPP did *not* apply section 9718.1 in denying Evans parole is to suggest a fact that is contrary to the well-pleaded facts in this case. Al-

though the PBPP did not refer to section 9718.1 or use its language, in considering the demurrer here, the majority *must* accept the *well-pleaded* fact that the PBPP applied the provision to Evans.

In addition, the majority states that the PBPP did not consider Evans "ineligible" for parole under section 9718.1 for failure to participate in sex offender treatment programs; in making this statement, the majority relies on the fact that the PBPP conducted a parole interview with Evans once after the passage of section 9718.1. (Majority op. at 911.) However, in this regard, the majority misses the point of Evans' Petition. Essentially, Evans' complaint is that the parole review process in his case was a pretense, i.e., that the PBPP went through the process but *never* intended to release Evans on parole because, as a sex offender, he was not "eligible" for parole under section 9718.1.

Next, the majority states that, assuming that the PBPP retroactively applied section 9718.1 in Evans' case, Evans' Petition fails to show how that increased Evans' incarceration; the majority states that Evans' claim rests on nothing more than mere speculation. (Majority op. at 911–12.) However, the fact alleged in the Petition is that Evans was *released* on parole in 1991 *without* having undergone sex offender treatment, but that he now remains incarcerated because of the retroactive application of section 9718.1. Thus, the Petition *does* show how the PBPP's retroactive application of section 9718.1 has increased his incarceration.

Finally, the majority states that section 9718.1 of the Sentencing Code is not a penal statute. (Majority op. at 911–12.) However, it is part of the *Sentencing* Code, and, as such, it governs the term of imprisonment for certain sex offenders.

Certainly, it is penal in nature.[11] Indeed, the U.S. Supreme Court has stated that, where the retroactive application of a state's parole laws results in a longer period of incarceration for a prisoner, there is an increase in punishment and a violation of the *ex post facto* clause. *See Garner.* Although the purposes of section 9718.1 may include protection of the public and the rehabilitation and treatment of prisoners, there is an obvious penal component to any statute that increases a person's confinement in prison.

---

**11.** If the Sentencing Code is *not* penal, then there are no statutory provisions for punishing criminals in this state.