**David R. McGINLEY, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 20, 2013.

Decided April 21, 2014.

David R. McGinley, pro se.

Jason A. Lambrino, Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

David R. McGinley (McGinley), pro se, filed a petition for a writ of mandamus which we will treat as a Petition for Review (Petition). Therein, McGinley requests this Court to prohibit the Pennsylvania Board of Probation and Parole (Board) from *ex post facto* applying Section 9718.1(b) of the Sentencing Code, 42 Pa.C.S. § 9718.1(b),[1] to his parole eligibility, to direct the Board to re-evaluate him for parole without applying Section 9718.1(b) of the Sentencing Code, and to direct the Board to disclose the source of the reports upon which the Board relied in denying his parole. In response, the Board filed preliminary objections to dismiss McGinley's Petition on the following grounds: (1) Pennsylvania Rule of Civil Procedure (Pa.R.C.P.) No. 1019(a) for failure to set forth the material facts in a concise and summary form; (2) Pa.R.C.P. No. 1022 for not dividing his pleading into consecutively-numbered paragraphs containing single material allegations; and (3) Pa.R.C.P. No. 1028(a)(4) for legal insufficiency of the pleadings. We address the Board's preliminary objections.

■ McGinley is currently incarcerated in the State Correctional Institution at Waymart (SCI–Waymart), Pennsylvania. On December 7, 1995, he was sentenced to 10 to 30 years for indecent exposure, corruption of minors, aggravated indecent assault, indecent assault, and involuntary deviate sexual intercourse. He first became eligible for parole on December 7, 2005. The Board denied McGinley parole at that time in 2005, and again thereafter in 2009 and 2011.

**1.** Section 2 of the Act of December 20, 2000, P.L. 721, amended the Sentencing Code by adding Section 9718.1, which was effective immediately. Section 9718.1(b) of the Sentencing Code provides that a person incarcerated at a state correctional institution for certain sexual offenses involving child victims "shall not be eligible for parole" unless he has participated in the Department of Corrections' sex offender treatment program.

The Board first argues that McGinley's Petition "continually seeks to make legal arguments instead of concisely stating his material fact allegations." Board Prelim. Obj. ¶ 4. Pa.R.C.P. No. 1019(a) states that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." This Court has held that "[t]his Rule is satisfied if the allegations in a pleading contain averments of all facts the plaintiff must eventually prove in order to recover, and the averments are sufficiently specific to enable the adverse party to prepare a defense." *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Comm'n (PGC)*, 950 A.2d 1120, 1134 (Pa.Cmwlth. 2008).

Here, McGinley's Petition clearly sets forth the facts which lead to his incarceration, the process and details of his parole evaluations, and the purpose of his appeal. Although his Petition also includes legal arguments, it states the material facts upon which he seeks a writ of mandamus sufficiently specific to enable the Board to prepare its defense. Accordingly, we overrule the Board's first preliminary objection.

■ The Board next argues that "[a]ll [McGinley's Petition] paragraphs contain multiple material and nonmaterial allegations." Board Prelim. Obj. ¶ 6. Pa.R.C.P. No. 1022 requires that "[e]very pleading shall be divided into paragraphs numbered consecutively[, and] . . . shall contain as far as practicable only one material allegation." This Court has recognized that

[t]he thrust and purpose of this rule are set forth in 2A Anderson, Pennsylvania Civil Practice, [§] 1022.3, wherein it is stated:

This standard must be applied with great flexibility, not only because of the express direction of the rule that, 'the standard be followed as far as

practicable,' but also because there is no set standard as to what constitutes a material allegation. Mere length, complexity, and verbosity do not in themselves violate [Pa.R.C.P. No.] 1022 if the subsidiary facts averred fit together into a single allegation.

And generally, it may be said that the test of compliance is the difficulty or impossibility one has in answering the complaint.

*Gen. State Auth. v. Sutter Corp.*, 24 Pa. Cmwlth. 391, 356 A.2d 377, 380 (1976) (footnote omitted). Here, McGinley's Petition paragraphs do occasionally contain more than one allegation. However, in other paragraphs the subsidiary facts fit together to create a single allegation, and there is no obvious reason why the Board would have difficulty answering them. Accordingly, we overrule the Board's second preliminary objection.

■ Finally, the Board argues that McGinley's Petition fails to state a cause of action upon which relief may be granted. Pa.R.C.P. No. 1028(a) provides, in relevant part, that "[p]reliminary objections may be filed by any party to any pleading . . . [for] legal insufficiency of a pleading (demurrer). . . ." This Court has held:

Mandamus is an extraordinary writ designed to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the petitioner, a corresponding duty in the respondent, and want of any other adequate and appropriate remedy. Mandamus is not available to establish legal rights, but is appropriate only to enforce rights that have been established. In considering preliminary objections, we must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts. Preliminary objections will be sustained only where

it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief. We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion.

*Wilson v. Pennsylvania Bd. of Prob. and Parole*, 942 A.2d 270, 272 (Pa.Cmwlth. 2008) (citations omitted). "Mandamus will lie against the Board only if it has not followed the law or proper procedures in ruling on an application for parole." *Burkett v. Frank*, 841 A.2d 646, 649 (Pa. Cmwlth.2004).

▮▮▮ Here, McGinley seeks a writ of mandamus: (1) prohibiting the Board from *ex post facto* applying Section 9718.1(b) of the Sentencing Code, (2) requiring the Board to re-evaluate him for parole, and (3) requiring the Board to disclose the source of the reports upon which the Board relied in denying his parole. To that end, McGinley avers in his Petition, in pertinent part:

**2.** According to the Board's preliminary objections and brief in support thereof, McGinley was reviewed for parole and, on October 19, 2005, the Board refused his parole for the following reasons: (1) his minimization/denial of the nature and circumstances of his offense; (2) his refusal to accept responsibility for the offenses; (3) his failure to participate in and complete additional institutional programs; and, (4) his interview with the hearing examiner/Board member. ˙ *See* Board Prelim. Obj. ¶ 14; Board Br. at 2, App. A.

The Board again denied McGinley parole on October 27, 2009 for: (1) his unacceptable compliance with prescribed institutional programs; (2) negative Department of Corrections' (Department) recommendations; (3) his denial of the nature and circumstances of the offenses committed; (4) his refusal to accept responsibility for his offenses; and, (5) his lack of remorse. *See* Board Prelim. Obj. ¶ 15; Board Br. at 3, App. A.

The Board further explained that McGinley was last reviewed for parole which it denied

**4.** In September of 2005, [McGinley] appeared before the [Board]. No questions were asked. The Board members informed [McGinley] that he would never be granted parole until he had successfully completed the Department of Corrections (DOC) Sex Offender Program (Program). The decisions by the Board (Green Sheet) in 2005, 2009 and 2011 reflected this policy.[2]

**5.** In 2013, [McGinley] filed a request for administrative review and reconsideration for parole. [McGinley] was told that he was ineligible for a parole hearing because he failed to comply with 42 Pa.C.S.[ ] § 9718.1(b).

. . . .

**10.** [McGinley] supports his claim by observing that, since the enactment of the statute, parole is *impossible* for anyone who, like [McGinley], claims to be innocent of the crime for which he was convicted; whereas, prior to the enactment of the statute, it was *possible* for such a person to be granted parole.

**11.** Due process[3] and Equal Protec-

on November 9, 2011 due to: (1) his unacceptable compliance with prescribed programs; (2) his failure to participate in and complete additional institutional programs; (3) negative Department recommendations; (4) reports, evaluations and assessments reflecting his level of risk to the community; and, (5) his refusal to accept responsibility for his offenses. *See* Board Prelim. Obj. ¶ 16; Board Br. at 3, App. A.

McGinley admitted these facts. *See* McGinley Ans. to Prelim. Obj. at 2.

**3.** Due process under the United States Constitution provides that "no state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. There is a similar guarantee under Article 1, Section 9 of the Pennsylvania Constitution. However, "a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his maximum term of sentence." *Evans v. Pennsylvania Bd. of Prob. and Parole*, 820 A.2d 904, 913 (Pa.Cmwlth.2003).

tion [4] of the Law require that the Board shall not base its denial of parole on statutes enacted after [McGinley] was sentenced. . . .

. . . .

14. The Board, as a matter of record, has not considered any other facts about [McGinley]'s case that could reflect upon the validity of his conviction or the likelihood of his innocence, both of which directly affect any assessment of [McGinley]'s supposed threat to society.

15. [McGinley] has tried to provide this additional information extraneously through letters and requests for administrative review. He was ignored.

16. The Board's Rule under 61 Pa. C.S.[ ] § 6135(a)(1) [of the Prisons and Parole Code], Duty to Investigate, states that the Board . . . shall consider . . . the nature and *circumstances* of the offenses committed. Such consideration *must* include *facts* that directly impact factors being used to evaluate [McGinley] for parole.

17. Due Process requires the Board to follow the Rules as established by Law. In its failure to solicit and consider additional information, the Board has violated that principle.

18. [McGinley] has not been questioned impartially by DOC staff members. During interviews, any information that conflicts with 'official' versions of the alleged crimes and events is rejected and ignored.

McGinley Pet. for Review at 2–3.

McGinley's Petition fails to plead facts sufficient to establish that the Board erred and violated his right to due process by *ex post facto* requiring him to meet the requirements of Section 9718.1 of the Sentencing Code before he is paroled. McGinley alleges in his Petition that the Board told him in 2005, 2009 and 2011, and then again in 2013 when he sought administrative review, that he would not be granted parole until he successfully completed the DOC's sex offender treatment program. McGinley Pet. for Review at ¶¶ 4, 5.

 Both the United States and Pennsylvania Constitutions prohibit the enactment of *ex post facto* laws.[5] U.S. Const. art. I, § 10; Pa. Const. art. 1, § 17.

An *ex post facto* law is one which is adopted after the complaining party committed the criminal acts and inflicts a greater punishment than the law annexed to the crime, when committed.

---

4. The Equal Protection clause of the United States Constitution's Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Pennsylvania Constitution states that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. 1, § 26. "The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly." *Curtis v. Kline*, 542 Pa. 249, 254, 666 A.2d 265, 267 (1995). Here, McGinley has not pled any facts to support a claim that he was subjected to disparate treatment based on his membership in a particular class, or that he was treated differently than any other inmate seeking parole.

5. Article I, Section 10 of the United States Constitution states: "No State shall . . . pass any . . . *ex post facto* Law. . . ." U.S. Const. art. I, § 10 (emphasis added). Article 1, Section 17 of the Pennsylvania Constitution provides: "No *ex post facto* law . . . shall be passed." Pa. Const. art. 1, § 17. "[T]he *ex post facto* clauses of both constitutions are virtually identical, and the standards applied to determine an *ex post facto* violation are comparable." *Evans v. Pennsylvania Bd. of Prob. and Parole*, 820 A.2d 904, 909 (Pa. Cmwlth.2003).

One function of the *ex post facto* clause is to bar enactments which, by retroactive operation, increases the punishment for a crime after its commission.

*McGarry v. Pennsylvania Bd. of Prob. and Parole*, 819 A.2d 1211, 1214 (Pa. Cmwlth.2003) (citation omitted).

It is undisputed that Section 9718.1 of the Sentencing Code became effective after McGinley committed his crimes.[6] The Board conceded, and Section 3 of the Act of December 20, 2000, P.L. 721 (Act 2000–98), which added Section 9718.1 to the Sentencing Code, expressly provides that Section 9718.1 "shall apply to offenses committed on or after [December 20, 2000]." However, the Pennsylvania Supreme Court has declared that, in addition to being enacted after the criminal acts were committed, "[a] state law violates the *ex post facto* clause if it ... inflicts a greater punishment than the law annexed to the crime, when committed." *Coady v. Vaughn*, 564 Pa. 604, 606 n. 2, 770 A.2d 287, 289 n. 2 (2001) (quotation marks omitted). Although the first requirement is met in the instant case, there is nothing in McGinley's Petition to support a claim that the Board's alleged application of Section 9718.1 of the Sentencing Code inflicts a greater punishment than the law applicable when he committed his crimes.

Before the enactment of Section 9718.1 of the Sentencing Code, the Board had a long history of considering participation in sex offender programs a parole factor for convicted sex offenders. *See Evans v. Pennsylvania Bd. of Prob. and Parole*, 820 A.2d 904 (Pa.Cmwlth.2003); *Hibbard v. Pennsylvania Bd. of Prob. and Parole*, 816 A.2d 344 (Pa.Cmwlth.2003), *aff'd*, 578 Pa. 638, 854 A.2d 966 (2004); *Weaver v. Pennsylvania Bd. of Prob. and Parole*, 688 A.2d 766 (Pa.Cmwlth.1997); *Eldridge v. Pennsylvania Bd. of Prob. and Parole*, 688 A.2d 273 (Pa.Cmwlth.1997). Section 3(2) of Act 2000–98 expressly provides:

> **The addition of [Section] 9718.1 shall not preclude consideration of the factors set forth in that [S]ection in granting or denying parole for offenses committed before the effective date of this act,** except to the extent that consideration of such factors is precluded by the Constitution of the United States or the Constitution of the Commonwealth of Pennsylvania.

(Emphasis added). Thus, after Section 9718.1 of the Sentencing Code was enacted, the Board could still consider whether an inmate should participate in the DOC's sex offender treatment program. *Evans.*

Moreover, this Court has held:

> Without allegations to show how the retroactive application of Act 2000–98 increases, to a significant degree, the likelihood or probability of prolonging Petitioner's incarceration, his claim rests upon nothing more than mere speculation. Speculation cannot support an *ex post facto* claim.
>
> Act 2000–98 is not a penal statute; it does not 'punish.' ... [A] legislative measure will be considered penal where: (1) the legislature's actual purpose is punishment; (2) the objective purpose is punishment; or (3) the effect of the statute is so harsh that 'as a matter of degree' it constitutes punishment. Un-

---

**6.** Although the Board's parole denials referred generally to McGinley's failure to participate in and successfully complete "institutional programs," and did not specifically reference the DOC's sex offender treatment program (*see* n.2 herein), the Board's March 13, 2013 letter to McGinley stated: "You are ineligible for a parole interview because you have failed to attend and participate in a [DOC] program ... designed for incarcerated sex offenders. 42 Pa.C.S. § 9718.1(b)." McGinley Br.App.

der this test, Act 2000–98 cannot be construed as a penal statute.

First, the stated, actual purpose of Act 2000–98 is the protection of the public. As set forth in the Act, the General Assembly declared:

> It is the intent of the General Assembly to protect our most vulnerable and precious citizens, the Commonwealth's children, from the ravages of sexual abuse. Because sexual crimes committed against children are among the most heinous imaginable, the General Assembly declares it to be in the public interest to enact this act.

H.B. 47, 184th Gen. Assem., 1999 Reg. Sess. (Pa.2000). Requiring those persons incarcerated in a state institution for enumerated sexual offenses involving minors to participate in a treatment program was not intended as retribution, but rather to protect the public. This is a rational approach to reducing the serious danger that repeat sex offenders pose to the citizens of the Commonwealth, including our children.

Similarly, the objective purpose of the statute is non-punitive. Act 2000–98 protects vulnerable citizens and assists rehabilitated offenders to reenter society. This rehabilitative purpose is consistent with the Commonwealth's public policy to provide the opportunity for the offender to become a useful member of society. Act 2000–98 ensures that those to be paroled are provided needed treatment so they do not commit other similar crimes. Rehabilitation is a legitimate, non-punitive, objective of our penal system.

Finally, Act 2000–98 is not so harsh in effect as to constitute punishment. Because it provides treatment to an offender, Act 2000–98 facilitates early release of such offenders into the community. Parole prior to the expiration of his maximum sentence is an act of executive grace to which an inmate has no entitlement. Successful treatment can only be a positive factor for an inmate seeking early release.

Parole can only be granted by the Board when it appears that the interests of the Commonwealth will not be injured. It is therefore prudent to ensure that sex offenders are able to function appropriately when they reenter society. To enable rehabilitation, sex offender treatment is made available. To encourage offenders to avail themselves of the opportunity for treatment, early release through parole is used as an incentive. An offender who declines treatment is subjected to no greater burden than that imposed by the sentencing judge. However, an offender who accepts treatment may qualify for release before his maximum date. This result is not so harsh as to constitute punishment.

*Evans*, 820 A.2d at 912–13 (citations and footnote omitted).

Because Act 2000–98 does not facially or as applied modify McGinley's punishment, and McGinley's Petition otherwise fails to specifically state how the Board's application of Section 9718.1 of the Sentencing Code inflicts a greater punishment than the law applicable when he committed his crimes, we hold, as the *Evans* court did, that McGinley fails to plead facts sufficient to establish that the Board erred and violated his right to due process by *ex post facto* requiring him to meet the requirements of Section 9718.1 of the Sentencing Code before he can be paroled.

■ McGinley's Petition also fails to state a claim upon which this Court may direct the Board to re-evaluate him for parole. McGinley claims that, since the Board's reasons for denying his parole are boilerplate, are not based on accurate information, and the Board has never in-

quired why he maintains his innocence, the Board failed in its duty to investigate the nature and circumstances of his offenses. These claims lack merit.

■ Section 6139(a) of the Prisons and Parole Code mandates that the Board "shall consider" an inmate's parole application, as long as it is filed at least one year after the Board's last parole decision concerning that inmate. 61 Pa.C.S. § 6139(a)(2), (3); *see also* 37 Pa.Code § 63.1(b)-(c).[7] The Board may not restrict an inmate's right to apply for parole. *Marshall v. Pennsylvania Bd. of Prob. and Parole,* 162 Pa.Cmwlth. 256, 638 A.2d 451 (1994). According to McGinley's Petition, he was last considered for and denied parole in 2011 and, when he requested administrative review and reconsideration for parole, the Board notified him that he was ineligible because he failed to comply with Section 9718.1(b) of the Sentencing Code. The Prisons and Parole Code makes clear, however, that as long as the requisite time has passed since his last parole denial, McGinley may again apply for parole, and the Board is compelled to again consider it. Because McGinley can take the steps necessary to have the Board reevaluate him for parole, no order from this Court is necessary.

■ To the extent, however, that McGinley seeks to have this Court require the Board to consider certain factors or weigh them in a particular manner during the requested re-evaluation, McGinley still fails to state a claim upon which relief may be granted. Section 6137(a)(1) of the Prisons and Parole Code provides:

> The [B]oard may ... release on parole any inmate to whom the power to parole is granted to the [B]oard ..., whenever in its opinion:

> (i) The best interests of the inmate justify or require that the inmate be paroled.

> (ii) It does not appear that the interests of the Commonwealth will be injured by the inmate's parole.

61 Pa.C.S. § 6137(a)(1). However, "[n]othing under [Section 6139(a) of the Prisons and Parole Code] shall be interpreted as granting a right to be paroled to any person...." 61 Pa.C.S. § 6139(a)(3.2).

> As this Court has previously stated, parole is nothing more than a possibility, and if granted, it merely constitutes a favor given by the state, as a matter of grace and mercy, to a prisoner who has demonstrated a probability of his or her ability to function as a law-abiding citizen in society. Accordingly, a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his maximum term of sentence.

*Evans,* 820 A.2d at 913 (citations and quotation marks omitted). Thus, although the Board is required to consider a prisoner's application for parole filed after the minimum term of his sentence has expired, it has the power and broad discretion to grant or deny the application. 61 Pa.C.S. §§ 6137(a)(3), 6139(a)(2); *see also Mickens–Thomas v. Bd. of Prob. and Parole,* 699 A.2d 792 (Pa.Cmwlth.1997).

■ As McGinley avers in his Petition, Section 6135(a) of the Prisons and Parole Code mandates what factors the Board "shall consider" when reviewing an inmate's parole application:

> (1) The nature and circumstances of the offense committed.

> (2) Any recommendations made by the trial judge and prosecuting attorney.

7. Section 6139(a)(1) of the Prisons and Parole Code, 61 Pa.C.S. § 6139(a)(1), also authorizes the Board to grant parole on its own motion. *See also* 37 Pa.Code § 63.1(a).

(3) The general character and background of the inmate.

(4) Participation by an inmate sentenced after February 19, 1999, and who is serving a sentence for a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a victim impact education program offered by the Department of Corrections.

(5) The written or personal statement of the testimony of the victim or the victim's family submitted under section 6140 (relating to victim statements, testimony and participation in hearing).

(6) The notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available.

(7) The conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record.

61 Pa.C.S. § 6135(a). The Board has the discretion as to which of these factors should be afforded the most weight. *Hibbard.* Moreover, "[m]andamus cannot be used to say that an agency considered improper factors, that its findings of fact were wrong, or that the reasons set forth in its decision are a pretense." *Weaver,* 688 A.2d at 777. "[I]n an action in mandamus involving an administrative agency's exercise of discretion, we may only direct the agency to perform the discretionary act; we may not direct the agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken." *Evans,* 820 A.2d at 914–15. Accordingly, this Court is not permitted to compel the Board, when considering whether to grant parole, to weigh the factors in Section 6135 of the Prisons and Parole Code in a particular way. *Coady.* Thus, to the extent that McGinley seeks to have this Court impose such a standard, he fails to state a claim upon which relief may be granted.

▮ McGinley's Petition likewise fails to state a claim upon which this Court may direct the Board to disclose the source of the reports upon which it relied in denying McGinley's parole applications. In support of his claim, McGinley alleges in his Petition, in pertinent part:

20. In its last Green Sheet, dated November 17, 2011, the Board refers to unspecified and unidentified reports.

. . . .

22. The principles of Due Process also imply that all reports from any Commonwealth agency that the Board relies upon during [its] evaluation of an applicant's suitability for parole should be disclosed to the applicant and should be subject to review, correction, and the challenge of unsupported claims or conclusions.

23. It has been established by the record that [McGinley]'s Pre–Sentence Investigation Report, which the Board has acknowledged that [it is] using to evaluate [McGinley] for parole, has an unsupported and inaccurate statement made by an employee of a Commonwealth agency.

McGinley Pet. for Review at 4.

▮ Section 6135(a) of the Prisons and Parole Code requires the Board to consider numerous statements and reports during its parole evaluation process. *See also* 61 Pa.C.S. § 6139(b) (authorizing the Board's reliance on reports in lieu of in-person witnesses and evidence). To the

extent any of these statements and reports qualify as "public records," an inmate has the same right as any citizen to make a Right–To–Know Law [8] request to view his inmate records. *Nanayakkara v. Casella*, 681 A.2d 857 (Pa.Cmwlth.1996). However, concerning the only report McGinley specifically referred to, his Pre–Sentence Investigation Report,[9] this Court has held:

> [A]fter sentencing, an inmate generally does not have a right to access a copy of his pre-sentence investigation report without an order of the sentencing court. Rule of Criminal Procedure 703(C) provides: After sentencing, *unless the sentencing judge otherwise orders* . . . psychiatric, psychological, and pre-sentence reports shall . . . be available to:
>
> > (1) correctional institutions housing the defendant; and
> >
> > (2) departments of probation or parole supervising the defendant; and
> >
> > (3) departments of probation or parole preparing a pre-sentence investigation report regarding the defendant.
>
> The reports shall continue to be *confidential and not of public record.*

Pa. R.Crim. P. 703(C) (emphasis added). Thus, regardless of whether SCI maintains a copy of [an inmate]'s pre-sentence investigation report, [the inmate] is not one of the few individuals who are permitted to access the report after sentencing without an order of the sentencing court. As a result, we conclude [an inmate] lacks a clear legal right to compel DOC to provide him access to a copy of his pre-sentence investigation report.

*Cunningham v. Pennsylvania Dep't of Corr.*, 990 A.2d 1205, 1208 (Pa.Cmwlth. 2010) (footnote omitted). Because McGinley does not aver in his Petition that he requested copies of the reports relied upon by the Board when making his parole reviews, or that the sentencing court has permitted release of his Pre–Sentence Investigation Report, he fails to state a claim upon which this Court may direct the Board to disclose the reports used in denying McGinley's parole applications.

Because McGinley fails to state a claim for a writ of mandamus to: (1) prohibit the Board from *ex post facto* applying Section 9718.1(b) of the Sentencing Code to his parole eligibility, (2) require the Board to re-evaluate him for parole, and (3) mandate the Board to disclose the source of the reports upon which the Board relied in denying his parole, we sustain the Board's third preliminary objection.

Based on the foregoing, we overrule the Board's first two preliminary objections,

---

**8.** Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

**9.** [A] pre-sentence investigation report is comprised of:

a summary of the circumstances attending the commission of the crime, the history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation and personal habits of the defendant, any history of drug or alcohol abuse or addiction and any other matters that the person preparing the report deems relevant or that the court directs be included.

42 Pa.C.S. § 9732. In addition, the pre-sentence investigation report includes 'a victim impact statement as provided by law.' Pa.R.Crim.P. 702(A)(4).

*Cunningham v. Pennsylvania Dep't of Corr.*, 990 A.2d 1205, 1207 (Pa.Cmwlth.2010). Section 6140(h) of the Prisons and Parole Code also specifically prohibits release of victim statements, and the information contained therein, without the victim's written consent. 61 Pa.C.S. § 6140(h)(8)-(12).

sustain its third preliminary objection, and dismiss McGinley's Petition.

### ORDER

AND NOW, this 21st day of April, 2014, the Pennsylvania Board of Probation and Parole's first two preliminary objections are overruled, the third preliminary objection is sustained, and David R. McGinley's Petition for Review is dismissed.