IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dwight Bowen,                   :
           Petitioner        :
                          :
       v.                       :
                          :
Department of Corrections Houtzdale   :
Superintendent Barry Smith, Houtzdale  :
Deputy Superintendent David Close,     :
Houtzdale Deputy Superintendent B. J.   :
Salamon Houtzdale Major J. Barrows     :
and Houtzdale Major Rydbom,         :   No. 576 M.D. 2019
               Respondents    :   Submitted:  April 24, 2020


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED:  August 28, 2020


Before this Court in our original jurisdiction are the preliminary objections filed by the Department of Corrections (Department) and various employees at the State Correctional Institution (SCI) at Houtzdale (SCI-Houtzdale)[1] (collectively, Respondents) to a petition for review (Petition) filed, *pro se*, by inmate Dwight Bowen (Bowen).  In the Petition, Bowen challenges the process he received when Respondents decided to continue his placement in administrative custody status, within the Restricted Housing Unit (RHU) and on a Restricted Release List

---

[1] The individual Respondents are Superintendent Barry Smith, Deputy Superintendent David Close, Deputy Superintendent B. J. Salamon, Major J. Barrows, and Major Rydbom.

(RRL), pursuant to the Department's Administrative Directive 802 (DC-ADM 802).[2] Upon review, we sustain Respondents' preliminary objections in the nature of a demurrer[3] and dismiss the Petition.

The facts as pleaded in the Petition are as follows.[4] On January 2, 2019, Bowen was transferred from SCI-Pine Grove to SCI-Houtzdale and was placed in a

---

[2] DC-ADM 802 is a policy established by the Department to place an inmate in administrative custody status whose presence in the general population would constitute a threat to life, liberty, himself, staff, other inmates, the public, or the secure or orderly operation of the facility. DC-ADM 802, Policy Statement § III. Administrative custody is a status of confinement for non-disciplinary reasons that provides closer supervision, control and protection than is provided in the general prison population. DC-ADM 802 § 3.A.1. An inmate confined in this status may be placed in a Security Level 5 Housing Unit (L-5), including a Psychiatric Observation Cell, by order of the Shift Commander, a psychiatrist, or a Certified Registered Nurse Practitioner for various reasons, including if he is a danger to himself or has been charged with or is under investigation for a violation of facility rules and there is a need for increased control pending disposition of the charges or completion of the investigation. *Id*. § 1.B.1. An inmate confined in this status does not have the same privileges as are available within the general population. *Id*. § 3.A.1.

RRL placement occurs when the inmate poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern. *Id*. § 1.C.1. An inmate on the RRL cannot be released from the RHU or transferred to another facility without the written approval of the Secretary or his designee. *Id*. § 4.B.1.

We take judicial notice of DC-ADM 802, which appears on the Department's official website at https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx (last visited August 27, 2020). *See Figueroa v. Pa. Bd. of Prob. & Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on Department's website).

[3] Pennsylvania Rule of Civil Procedure 1028(a)(4) provides that preliminary objections may be filed by any party for legal insufficiency of a pleading (demurrer). Pa.R.C.P. No. 1028(a)(4). A preliminary objection in the nature of a demurrer tests "the legal sufficiency" of the petition and will be sustained only in cases where the pleader has "clearly failed to state a claim for which relief can be granted." *Clark v. Beard*, 918 A.2d 155, 158-59 n.4 (Pa. Cmwlth. 2007). "The demurrer may be granted only in cases which are so free from doubt that a trial would certainly be a fruitless exercise." *Id*.

[4] We must accept all well-pleaded material facts and all inferences reasonably deducible therefrom when evaluating a preliminary objection in the nature of a demurrer. *Dodgson v. Pa. Dep't of Corr.*, 922 A.2d 1023, 1027-28 (Pa. Cmwlth. 2007); *Clark*, 918 A.2d at 158 n.4. We do not have to accept as true conclusions of law, unwarranted inferences, argumentative allegations or expressions of opinion. *Dodgson*, 922 A.2d at 1028. We may consider documents or exhibits attached to the petition, but do not need to accept as true averments in the petition that conflict

Psychiatric Observation Cell because he was a danger to himself or others.  Petition ¶ 41, Ex. D, p.16.  Additionally, Bowen was placed in administrative custody status because he was "under investigation for a violation of facility rules" at SCI-Pine Grove, and "there [was] a need for increased control pending disposition of charges or completion of the investigation."  *Id.* at Ex. E, p.17.  Bowen's transfer and placement in administrative custody status was related to the death of his cellmate at SCI-Pine Grove and a subsequent investigation into how that death occurred.  *Id.* ¶¶ 33-36.[5]  Though Bowen was discharged from the Psychiatric Observation Cell on January 6, 2019, he remained in that cell until January 15, 2019, when housing space became available in the RHU.  *Id.* ¶ 18, Ex. N., p.47.

On January 31, 2019, Bowen received another notice stating that he was to "remain housed" in the RHU "pending further review" by security and the Program Review Committee (PRC).[6]  Petition at Ex. E, p.18.  Bowen appealed this notice the same day.  *Id.* at Ex. E, p.19.  On February 1, 2019, Superintendent Barry

---

with the exhibits attached to it.  *Lawrence v. Pa. Dep't of Corr.*, 941 A.2d 70, 71 (Pa. Cmwlth. 2007).

[5] A criminal indictment was subsequently filed against Bowen for the death of his cellmate.  *See* Bowen Affidavit dated 12/24/19.

[6] The PRC is a committee consisting of three staff members who conduct administrative and disciplinary custody hearings and periodic reviews, make decisions regarding continued confinement in an L-5 unit, and hear all first level appeals of misconducts.  *Torres v. Beard*, 997 A.2d 1242, 1248 n.7 (Pa. Cmwlth. 2010).  The PRC is required to, at least every 30 days, "ensure each such inmate is reviewed to determine whether there is a continuing need for separation from the general population."  DC-ADM 802 § 1.A.7.

Here, Bowen brings his action against Deputy Superintendents David Close and B. J. Salamon, two members of the PRC that reviewed his administrative custody status.  *See* Petition at Ex. H, p.31.  Deputy Superintendent B. J. Salamon was also the facility manager at SCI-Houtzdale.  *Id.* at Ex. D, p.16.  Bowen makes no specific factual allegations against Major J. Barrows and Major Rydbom in the Petition, though he names these employees as parties to this matter.

Smith (Superintendent) rejected Bowen's appeal as untimely. *Id*. at Ex. E, p.20. Bowen appealed the Superintendent's decision to the Chief Hearing Examiner, who denied the appeal on February 26, 2019. *Id*. at Ex. E, p.21-22.

On May 2, 2019, Bowen received a 90-day review of his administrative custody status, at which time the PRC decided to continue it. Petition at Ex. A, p.8.[7] On May 3, 2019, Bowen appealed this decision to the Superintendent, who denied the appeal. *Id*. at pp. 23-25. Bowen then appealed to the Chief Hearing Examiner, who concurred with the action taken by the PRC and the Superintendent. *Id*. at Ex. E, p.26. On June 13, 2019, Bowen received another review of his administrative custody status, wherein he was informed that he was placed on the RRL. *Id*. ¶ 5. Bowen appealed the RRL placement and the result of his June 13, 2019 review, and his appeal was ultimately denied by the Superintendent and the Chief Hearing Examiner. *Id*. ¶ 6, Ex. H, pp.33-35.

After approximately eight months in the RHU, on September 18, 2019, Bowen filed the Petition with this Court. Bowen complains about the June 13, 2019 periodic review where it was determined that he would remain in administrative custody, claiming he was "not given an adequate opportunity to be heard" as he was "dismissed" from the hearing without a chance to address all of his concerns, in violation of DC-ADM 802 and 37 Pa. Code § 93.11. Petition ¶¶ 4-5. Additionally, Bowen asserts that during the June 13, 2019 periodic review, he was placed on the RRL even though he had been "misconduct free and followed all the rules." *Id*. ¶ 5. Finally, Bowen avers that he has been in "behavior modified camera cells" for seven months and complains about the "conditions of confinement." *Id*. ¶ 7. Specifically,

---

[7] Pursuant to DC-ADM 802, the PRC shall interview an inmate in administrative custody status every 90 days, after the first 60 days, unless the Unit Management Team recommends an earlier review. DC-ADM 802 § 2.D.5.

Bowen alleges that he was housed in a cold cell because staff left the door to the yard open, and there was a big fluorescent light that remained on all night.[8]  *Id.*

For relief, Bowen seeks an order mandating his release from the RHU, removal from the RRL, and an award of monetary compensation.  Petition ¶ 46. Bowen also requests that he be granted "all privileges" that a prisoner in administrative custody status is entitled to receive, including "phone and kiosk access once a week, extended commissary purchases, radio/tablet access in the cell, to have his [television] in the cell and to be given general labor poll . . . pay and to acquire employment."  *Id.* ¶ 47.  Finally, Bowen requests to "be seen by psychology/ psychiatry about his fears. . . ."  *Id.* ¶ 48.

In response to the Petition, Respondents filed preliminary objections in the nature of a demurrer.  Respondents assert that Bowen has failed to state a claim for which relief can be granted because he has not alleged a constitutional right that has been deprived, such as a liberty interest or hardship with respect to the conditions of his confinement, to entitle him to due process protection.  Preliminary Objections (POs) ¶¶ 25, 26.  Even if Bowen has pled a liberty interest with respect to his administrative custody status, Respondents contend that Bowen received adequate due process because he received notice of the reasons for the placement, had an opportunity to appeal the placement, and received periodic reviews of that placement.  *Id.* ¶ 32.  Respondents further argue that placement on the RRL does not

---

[8] Bowen also alleges that his property remained at SCI-Pine Grove after his transfer to SCI-Houtzdale, and requests that his property be shipped to SCI-Houtzdale.  Petition ¶¶ 41-45.  Bowen explains that his property was held at SCI-Pine Grove pending the Pennsylvania State Police's investigation into the death of his cellmate.  *Id.* ¶ 41.  However, an exhibit attached to the Petition shows Bowen's property was shipped to SCI-Houtzdale in March 2019.  Petition at Ex. K, p. 39 (stating "[y]our property is here.  You should be having an inventory of it conducted shortly.").  *See Lawrence*, 941 A.2d at 71 (providing that courts do not need to accept as true averments in a petition that conflict with the exhibits).

implicate due process because it does not affect the restrictive nature of an inmate's confinement. *Id.* ¶ 34. Based on the foregoing, Respondents seek dismissal of the Petition.

We begin by examining the nature of the relief Bowen seeks from this Court. Bowen seeks mandamus relief in the form of an order requiring Respondents to transfer him out of the RHU, discontinue his RRL placement, and grant him certain privileges. Petition ¶¶ 45-48. Though Bowen also requests monetary damages, the true nature of his request is to be removed from the RHU and, therefore, sounds in mandamus. In support of his request, Bowen states that he was not afforded the process due to him as provided by DC-ADM 802 or 37 Pa. Code § 93.11, and that his confinement is "significantly more restrictive" than others in administrative custody status. *Id.* ¶¶ 4-5, 7.

Mandamus is an "extraordinary writ" that compels the performance of a ministerial act or mandatory duty when the petitioner demonstrates (1) a clear legal right to relief, (2) a corresponding duty in the respondent, and (3) there are no other adequate and appropriate remedies at law. *Sanders v. Wetzel*, 223 A.3d 735, 739 (Pa. Cmwlth. 2019) (citation omitted). "Mandamus is not available to establish legal rights, but is appropriate only to enforce rights that have been established." *Wilson v. Pa. Bd. of Prob. & Parole*, 942 A.2d 270, 272 (Pa. Cmwlth. 2008). Moreover, mandamus cannot be used to compel a body vested with discretion to exercise that discretion in a certain manner or to arrive at a particular result. *Weaver v. Pa. Bd. of Prob. & Parole*, 688 A.2d 766, 776 (Pa. Cmwlth. 1997).

Here, Bowen relies on the Department's policy, DC-ADM 802, and the regulation at 37 Pa. Code § 93.11[9] to support his request for mandamus relief.

_____

[9] The Department's regulation provides:

However, we have repeatedly held that the Department's policies do not create rights in prison inmates, and a claim that Department employees failed to comply with prison policy is not a basis for a cause of action. *See, e.g., Sanders*, 223 A.3d at 740 (citing *Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017); *Tindell v. Dep't of Corr.*, 87 A.3d 1029 (Pa. Cmwlth. 2014)). In fact, the regulation here actually undermines Bowen's claim as it specifically states "[a]n inmate does *not* have a right to be housed in a particular facility or in a particular area within a facility." 37 Pa. Code § 93.11(a) (emphasis added). Our courts have repeatedly recognized this, stating "[i]t is entirely a matter of the Department's discretion where to house an inmate." *Clark v. Beard*, 918 A.2d 155, 160 (Pa. Cmwlth. 2007). *See also Tindell*, 87 A.3d at 1035 ("Allegations that corrections officers have failed to follow rules and regulations promulgated by prison officials that do not also allege this failure has *violated a clearly* established statutory *or constitutional right* of a prison inmate cannot state a claim for mandamus, because administrative rules and regulations 'do not create rights in prison inmates.'") (citing *Commonwealth ex rel. Buehl v. Price*, 705 A.2d 933, 936 (Pa. Cmwlth. 1997); *Lawson v. Dep't of Corr.*, 539 A.2d 69, 71-72 (Pa. Cmwlth. 1988)) (emphasis added).

---

(a)    An inmate does not have a right to be housed in a particular facility or in a particular area within a facility.

(b) Confinement in a [RHU], other than under procedures established for inmate discipline, will not be done for punitive purposes. [The Department] will maintain written procedures which describe the reasons for housing an inmate in the RHU and require due process in accordance with established principles of law for an inmate who is housed in the RHU. Inmates confined in the RHU will be reviewed periodically by facility staff.

37 Pa. Code § 93.11.

7

In *Sanders*, 223 A.3d 735, this Court specifically rejected a similar mandamus claim that DC-ADM 802 and 37 Pa. Code § 93.11 invoked rights or imposed duties on the Department and its employees as they pertained to placement in segregated housing. In so holding, we referred to the disclaimer language in DC-ADM 802 providing that the policy does not create "*rights*" in inmates or duties for the Department, and concluded that the policy does not create an actionable liberty interest in connection with placement in segregated housing. *Id.* at 740-41. Further, we explained that 37 Pa. Code § 93.11(b) does not create a right to due process when an inmate is placed in segregated housing because the regulation states that it only requires "due process in accordance with established principles of law." *Id*. at 741-42. Those established principles provide that placement in the RHU does not invoke a protected liberty interest. *Id*.; *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that a state regulation providing for an inmate's placement in segregated confinement did not invoke a protected liberty interest because the restraint did not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

Nevertheless, Bowen argues that he has spent nearly eight months in administrative custody and was denied the process to which he was entitled when his administrative custody status was reviewed. Petition ¶¶ 4, 8. However, Bowen cannot establish deprivation of a liberty interest based solely on the length of his confinement because eight months is not an unduly lengthy period. This is particularly true here where Bowen supplied the Court with evidence that he was placed in administrative custody based on the allegation that he killed his cellmate, and the resulting criminal investigation and indictment. *See* Bowen Affidavit dated 12/24/19 (stating that the district attorney's office got the "green light" to file the indictment against him); *see also Griffin v. Vaughn*, 112 F.3d 703, 705-08 (3d Cir.

8

1997) (holding that inmate placed in administrative custody for a period of 15 months while an investigation of a rape incident was underway did not subject the inmate to "atypical and significant hardship" to support a state created liberty interest and entitle him to due process).[10]  Likewise, Bowen's placement on the RRL does not invoke a protected liberty interest because it does not affect the restrictive nature of his confinement; rather, it simply changes the decision-maker who must approve his release from restricted housing.  *See Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir. 2007).

Simply put, Bowen is asking this Court to reverse the decision of Respondents to keep him in the RHU and on the RRL, and to direct Respondents on how to exercise their discretion with respect to his privileges during incarceration. Mandamus cannot be used to direct the reversal or retraction of discretion already taken, or to direct how Respondents exercise their discretion in the future.  *See McGinley v. Pa. Bd. of Prob. & Parole*, 90 A.3d 83, 93 (Pa. Cmwlth. 2014); *Tindell*, 87 A.3d at 1035; *Clark*, 918 A.2d at 160-61 (providing that mandamus may not be used to compel an agency to exercise its discretion in a particular way, even if the Court believes it has been exercised incorrectly).[11]

---

[10] *Cf. Bowen v. Ryan*, 248 F. App'x 302, 304 (3d Cir. 2007) (per curiam) (providing that Pennsylvania inmate's confinement in administrative custody for 20 years was the type of atypical and significant hardship to invoke a liberty interest and trigger due process protections; however, the Department's procedures satisfied minimum due process standards); *Shoats v. Horn*, 213 F.3d 140, 143-47 (3d Cir. 2000) (holding that Pennsylvania inmate's confinement in administrative custody for eight years in "virtual isolation" with no prospect of immediate release in the near future imposed a significant hardship on the inmate in relation to the ordinary incidents of prison life and was atypical, but finding no due process violation because the Department's procedures were followed).

[11] Bowen also makes general complaints regarding the conditions of his confinement, including that his cell is freezing cold and a big fluorescent light is left on all night, causing him to lose sleep.  Despite these allegations, we note that the Petition is in the nature of mandamus and Bowen has not alleged that he has been denied certain life necessities, merely that the conditions in administrative custody are inadequate.  As we stated in *Tindell*,

Because Bowen fails to identify a clear legal right to relief or duty owed by Respondents, his mandamus claims must fail.[12]  Therefore, we grant Respondents' preliminary objections in the nature of a demurrer and dismiss the Petition.

_____
CHRISTINE FIZZANO CANNON, Judge

---

a conditions of confinement claim based on the adequacy of the life necessities provided, rather than whether or not inmates are being deprived of those baseline necessities cannot be stated in a mandamus action; a mandamus action can compel prison officials to clothe inmates within their care, but it cannot be used to determine the quality of clothing necessary under society's standards and to order that only clothing of that quality be used to clothe inmates.

87 A.3d at 1042.  Like the inmate in *Tindell*, Bowen's allegations regarding the conditions of his confinement in the RHU and the Psychiatric Observation Cell ask this Court to establish what his rights are rather than to enforce clearly established rights.  As such, he has not stated a claim for mandamus.  *Id.* at 1043.

[12] Because Bowen fails to state a claim upon which relief can be granted, he is not entitled to relief in the nature of monetary damages.  *Clark*, 918 A.2d at 165-66.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dwight Bowen,                                    :
             Petitioner                 :
                               :
        v.                               :
                               :
Department of Corrections Houtzdale    :
Superintendent Barry Smith, Houtzdale  :
Deputy Superintendent David Close,     :
Houtzdale Deputy Superintendent B. J.  :
Salamon Houtzdale Major J. Barrows     :
and Houtzdale Major Rydbom,            :   No. 576 M.D. 2019
              Respondents              :

## O R D E R

AND NOW, this 28th day of August, 2020, the preliminary objections filed by the Pennsylvania Department of Corrections, Superintendent Barry Smith, Deputy Superintendent David Close, Deputy Superintendent B. J. Salamon, Major J. Barrows, and Major Rydbom, are SUSTAINED and the Petition for Review filed by Dwight Bowen is DISMISSED.

 

_____
CHRISTINE FIZZANO CANNON, Judge