| | |
|---|---|
| Kevin M. Kaplafka Jr., : | |
| Petitioner : | |
| : | |
| v. : | |
| : | |
| Pennsylvania State Police and : | |
| Lieutenant Colonel Robert Evanchick, : | |
| Individually and in his capacity as : | |
| Lieutenant Colonel of the Pennsylvania : | |
| State Police and Colonel Tyree C. : | |
| Blocker, Individually and in his : | |
| capacity as Colonel of the Pennsylvania : | |
| State Police and Lieutenant Colonel : | |
| Lisa Christie Individually and in her : | |
| capacity as Lieutenant Colonel of the : | |
| Pennsylvania State Police and : | |
| Lieutenant William M. Bowan, : | |
| Individually and in his capacity as : | |
| Lieutenant of the Pennsylvania State : | |
| Police and Captain Margaret Dropinski, : | |
| Individually and in her capacity as : | |
| Captain of the Pennsylvania State Police : | |
| and Captain Maurice Tomlinson, : | |
| Individually and in his capacity as : | |
| Captain of the Pennsylvania State : | |
| Police and Captain Jeremy M. Richards, : | |
| Individually and in his capacity as : | |
| Captain of the Pennsylvania State : | |
| Police, : No. 634 M.D. 2018 | |
| Respondents : Argued: November 14, 2019 | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: February 7, 2020

Kevin M. Kaplafka, Jr. (Kaplafka) filed a Petition for Review (Petition) in our original jurisdiction seeking a writ of mandamus to compel the Pennsylvania State Police (PSP), Lieutenant Colonels (Lt. Col.) Robert Evanchick and Lisa Christie, Colonel Tyree C. Blocker, Lieutenant (Lt.) William M. Bowan, and Captains Margaret Dropinski, Maurice Tomlinson and Jeremy M. Richards (collectively, PSP Officers) to reinstate Kaplafka as a state trooper at the Pennsylvania State Police Academy (Academy).[1] The PSP and the PSP Officers filed preliminary objections in the nature of a demurrer.[2] The PSP and the PSP Officers also filed preliminary objections raising the affirmative defenses of statute of limitations and sovereign immunity, to which Kaplafka filed preliminary objections. Upon review, we sustain Kaplafka's preliminary objections and strike the PSP and PSP Officers' preliminary objections raising the affirmative defenses of statute of limitations and sovereign immunity, because they are procedurally improper. We also sustain the PSP and the PSP Officers' preliminary objections to the wrongful discharge claim in Count I and the deprivation of liberty interest claim in Count II. Finally, we lack jurisdiction over the tort claims raised in Counts III and IV of the Petition, and therefore, we transfer these claims to the Dauphin County

---

[1] Kaplafka is suing Evanchick solely in his official capacity as the current Commissioner of the PSP. Petition ¶ 13. Kaplafka is suing the remaining PSP Officers in both their official and individual capacities for their involvement in an investigation giving rise to his constructive discharge. *Id*. ¶ 15.

[2] In ruling upon preliminary objections in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deductible therefrom. *Evans v. Pa. Bd. of Prob. & Parole*, 820 A.2d 904, 906 n.3 (Pa. Cmwlth. 2003) (citing *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998)). We do not have to accept as true conclusions of law, unwarranted inferences, argumentative allegations or expressions of opinion. *Id*. "The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief." *Id*.

2

Court of Common Pleas along with the PSP and PSP Officers' preliminary objections to these claims for disposition.

### *Factual Background*

On November 15, 2018, Kaplafka filed his Petition with this Court alleging that he was constructively discharged from his position as a trooper with the PSP. In his Petition, Kaplafka alleges that on June 1, 2015, he enlisted with the PSP and attended the Academy as a member of the 143d class of cadets. Petition ¶¶ 4 & 17. To graduate from the Academy and become a PSP trooper, the cadets had to, in relevant part, attend classes and perform satisfactorily on tests pertaining to certain areas of the law. *Id.* ¶¶ 21-25. Of relevance here, the class immediately junior to Kaplafka's class, the 144th class, was scheduled to take the fourth traffic law examination (Traffic 4) on or about November 30, 2015. *Id.* ¶¶ 26 & 37. As a senior cadet, Kaplafka was instructed to assist junior cadets. *Id.* ¶ 39.

Kaplafka alleges that just before the Traffic 4 for the 144th class, a junior cadet, Cadet Russell, requested his help in preparing for the Traffic 4. Petition ¶ 40. Kaplafka advised Cadet Russell to study "the things the instructors had said to remember." *Id.* ¶ 41. During their discussion, Kaplafka handwrote and provided the numbers of the code sections to Cadet Russell that were highlighted in his own criminal justice handbook, which were the sections that the instructors told his class, the 143d class, to remember when he studied for the Traffic 4 as memorialized in the study guides he used when he prepared for Traffic 4. *Id.* ¶ 42. A few days after the 144th class took the Traffic 4, on December 4, 2015, Kaplafka graduated from the Academy as part of the 143d class and commenced his work as a patrol officer assigned to PSP Troop H, Lykens station in Elizabethville, Pennsylvania. *Id.* ¶¶ 4, 20 & 43.

3

Shortly after his graduation from the Academy, Kaplafka alleges that, unknown to him, a folded "cheat sheet" for Traffic 4 had been found in a hallway at the Academy. Petition ¶ 44. A cadet in the 144th class admitted that the cheat sheet belonged to him, which prompted the PSP to conduct an internal investigation regarding cheating. *Id*. ¶¶ 46-47. Upon arriving at work on January 11, 2016, Kaplafka alleges that he was directed to report to the Internal Affairs Division (IAD). *Id*. ¶ 48. The IAD commander, Lt. Bowan, and one of Lt. Bowan's investigators, questioned Kaplafka about his role in the cheating at the Academy. *Id*. ¶ 49. A union representative, Corporal Doug Howell, was present while Lt. Bowan and his investigator questioned Kaplafka. *Id*. ¶¶ 49-50. During the questioning, Kaplafka admitted that he wrote down the numbers of the highlighted code sections for Cadet Russell but he "resisted the characterization of his conduct as cheating." *Id*. ¶ 52. After Lt. Bowan and Lt. Bowan's investigator finished questioning him, Kaplafka alleges that he was "immediately placed on restrictive duty," serving in an administrative role at the Lykens station, where he remained for the next 10 months. *Id*. ¶¶ 56-57.

Kaplafka alleges that on or about May 2, 2016, he met with the Director of the "Administrative Division of the Bureau of Training and Education" at the PSP, Captain Dropinski, for a pre-disciplinary conference, which Corporal Howell attended. Petition ¶¶ 10 & 58-59. Shortly after the pre-disciplinary conference, Corporal Howell advised Kaplafka that "he believed the 'fix was in' and [that Kaplafka] would be terminated." *Id*. ¶ 59. On June 1, 2016, with Corporal Howell again in attendance, Kaplafka met with Captain Dropinski and the Director of the PSP Training Division, Captain Tomlinson, in connection with his disciplinary action report. *Id*. ¶¶ 10 & 61. Kaplafka alleges that, "[i]n spite of a lack of evidence

4

that he cheated," Captains Dropinski and Tomlinson decided to "sustain the allegations of cheating" against him and his case was forwarded to the Disciplinary Officer of the PSP, Captain Richards, to determine the appropriate punishment. *Id.* ¶¶ 12, 62 & 63. Approximately five months later, Kaplafka alleges that the "discipline office" decided that he should be terminated "although he was never provided with the precise grounds for such termination." *Id.* ¶ 65.

Kaplafka alleges that on October 4, 2016, he received a telephone call from his station commander, Sergeant Fry, advising him to report to the Commander of PSP Troop H, Captain Kosheba, for a meeting on October 6, 2016. Petition ¶¶ 66-68.[3] While being driven to the October 6, 2016 meeting, Kaplafka claims he received a telephone call from Sergeant Fry during which he advised Kaplafka that if he "did not resign, he would be terminated by [Captain] Kosheba at the meeting." *Id.* ¶ 68. Kaplafka further contends that Sergeant Fry offered to and did write Kaplafka a letter of resignation, Kaplafka executed the letter in the car at Troop H's Harrisburg headquarters, and Kaplafka provided the letter of resignation to Captain Kosheba, who accepted it. *Id.* ¶¶ 70-71.

Kaplafka alleges that after he had been constructively discharged and the PSP completed its investigation, the Commonwealth's Office of Inspector General (OIG) conducted its own investigation into the cheating scandal involving the 144th class of cadets. Petition ¶ 74. In early February 2017, the OIG made the results of its investigation public. *Id.* ¶ 76. The OIG report concluded that the

---

[3] In his Petition, Kaplafka alleges that the telephone call from Sergeant Fry occurred on October 4, 2018 and the meeting with Captain Kosheba occurred on October 6, 2018. Petition ¶¶ 66 & 68. However, it is apparent based on other allegations in Kaplafka's Petition that the year 2018 was a typographical error. *See*, *e.g.*, Petition ¶ 66 (alleging he was to report to the meeting with Sergeant Fry on "October 6, 2016"); *id.* ¶ 143 (alleging that he was terminated "in October 2016"). Therefore, in our recitation of facts alleged by Kaplafka, we use the year 2016 rather than 2018.

primary factor causing cheating at the Academy was the culture and policies created by its staff and instructors. *Id*. ¶¶ 77 & 87.[4] Based on the foregoing allegations of fact, Kaplafka brings four claims against the PSP and the PSP Officers relating to his alleged constructive discharge as a PSP trooper.

In Count I, Kaplafka alleges wrongful discharge in violation of public policy articulated in PSP Field Regulation (F.R.) 1-2, Section 2.02 (5/16/2017), requiring members to be responsible for their own acts, and seeks a writ of mandamus to compel the PSP and the PSP Officers to withdraw his termination and permit him to rejoin the PSP as a trooper. Petition ¶¶ 102 & 113. Alternatively, in Count II, Kaplafka alleges a claim under 42 U.S.C. § 1983 (Section 1983) for deprivation of liberty interest in reputation without due process of law as secured by the 14th Amendment of the United States Constitution, U.S. Const. amend. XIV, § 1, and seeks a name-clearing hearing. *Id*. ¶¶ 116, 126 & 130. In Counts III and IV, Kaplafka alleges "[i]n the [a]lternative" claims against all "[Respondents] in their individual capacities," *i.e.*, the PSP Officers, except Lt. Col. Evanchick, for tortious

---

[4] The OIG report stated, in relevant part:

> [t]he evolved culture within the Academy up to the 144th [c]adet [c]lass appears to have permitted the sharing within cadet classes and between cadet classes of information concerning Academy examinations, in some cases questions and answers. This is shown through some of the so-called "study guides" that the OIG found during its review, some of which members of earlier Academy classes passed to members of the 144th [c]adet [c]lass. Because over time the Academy rarely changed examination questions and correct answers, this essentially transformed some study guides into cheat sheets for future Academy classes. . . . It is unclear to the OIG whether the PSP investigators who initially reviewed the [c]adets' actions were aware of, and appreciated, this culture at the time of their investigations. . . .

Petition ¶ 80 & Ex. A, OIG Investigative Report at 33-34.

6

interference with contractual relations and tortious interference with prospective relations, respectively, and seeks an award of damages in excess of $50,000 together with "interest, costs, and all other or further relief available under law." Petition ¶¶ 134, 143 & Wherefore Clauses at pp. 30-31 & 33-34.

The PSP and the PSP Officers responded by filing preliminary objections in the nature of a demurrer. First, the PSP and the PSP Officers assert that Kaplafka cannot prevail on his Petition because he fails to establish a right or privilege in continued employment as a probationary state trooper. Preliminary Objections by Respondents to the Petition for Review (PSP Objections) ¶¶ 23-25 & Wherefore Clause at p. 6. Second, the PSP and the PSP Officers raise the affirmative defense that the statute of limitations has lapsed on the wrongful discharge claim, *id*. at ¶¶ 30-34, but contend that if this Court reviews the merits of the case, then Kaplafka cannot prevail on his request for mandamus because he cannot show that "the act of dismissing him was ministerial or mandatory" and because he "has no legal right to compel PSP to withdraw his termination." *Id*. ¶ 50.

Third, the PSP and the PSP Officers assert that Kaplafka cannot prevail on his Section 1983 claim alleging a deprivation of liberty interest in reputation, because he fails to assert any actual harm that occurred to his reputation and he cannot demonstrate a legal right to a name-clearing hearing because he has already received an opportunity before the PSP Officers to refute the charges. PSP Objections ¶¶ 57 & 65. Fourth, the PSP and the PSP Officers object to Kaplafka's Section 1983 claim because the PSP is not a proper respondent, the individual PSP Officers cannot be held liable in their official capacities and the PSP Officers lack personal involvement in the conduct giving rise to his constructive discharge to cause a violation of his constitutional rights. *Id*. ¶¶ 71 & 85-86. The PSP and the

7

PSP Officers contend that Kaplafka fails to state a claim because he does not allege any facts to show that the PSP Officers acted outside the scope of their duties. PSP Objections ¶¶ 90-91. Finally, the PSP and the PSP Officers assert that sovereign immunity applies to the tortious interference with contractual relations and prospective contractual relations claims. *Id*. ¶¶ 92-98.

In response to the PSP and the PSP Officers' preliminary objections, Kaplafka filed preliminary objections requesting that the affirmative defenses based on the statute of limitations and sovereign immunity be stricken because they are procedurally improper. *See* Preliminary Objections of Petitioner in Response to the Preliminary Objections filed by Respondents ¶¶ 9-15. We begin our review by considering Kaplafka's preliminary objections to the PSP and the PSP Officers' affirmative defenses.

### *Affirmative Defenses*

The PSP and the PSP Officers contend that Kaplafka cannot prevail on his claim seeking mandamus for wrongful discharge because he did not file it within six months of his resignation as required by the applicable statute of limitations at 42 Pa.C.S. § 5522(b)(1) (providing that the "following actions and proceedings must be commenced within six months . . . [a]n action against any officer of any government unit for anything done in the execution of his office . . ."). PSP Objections ¶¶ 32-34. The PSP and the PSP Officers further object that Kaplafka's claims relating to tortious interference with contractual relations and prospective relations should be dismissed because the PSP and the PSP Officers are entitled to sovereign immunity. *Id*. ¶¶ 94-98.

However, Pennsylvania Rule of Civil Procedure 1030(a) provides that the affirmative defenses of statute of limitations and immunity from suit must be

8

raised in a responsive pleading under the heading new matter, not as a preliminary objection. Pa.R.C.P. No. 1030(a). Courts have permitted a limited exception to this rule and allowed parties to raise the affirmative defense of immunity as a preliminary objection in cases where it is "clearly applicable on the face of the complaint" and where the plaintiff, or petitioner, has not objected to the improper procedure. *See Brimmeier v. Pa. Tpk. Comm'n*, 147 A.3d 954, 961 n.6 (Pa. Cmwlth. 2016); *Sweeney v. Merrymead Farm, Inc.*, 799 A.2d 972, 975 (Pa. Cmwlth. 2002).

Here, Kaplafka filed objections to the PSP and the PSP Officers' attempt to raise affirmative defenses in their preliminary objections and asserts that the PSP and the PSP Officers' objections are procedurally improper. *See* Preliminary Objections of Petitioner in Response to the Preliminary Objections filed by Respondents ¶¶ 9-15. Because Kaplafka has objected to the procedure and Pennsylvania Rule of Civil Procedure 1030(a) requires these affirmative defenses to be raised under the heading of new matter, we sustain Kaplafka's objection that the affirmative defenses fail to comport to rules of court. Therefore, we strike the PSP and the PSP Officers' preliminary objections raising the affirmative defenses of statute of limitations and sovereign immunity. We now turn to the preliminary objections raised by the PSP and the PSP Officers to Kaplafka's Petition beginning with the objections to Count I, the wrongful discharge claim.

### *Count I: Wrongful Discharge*

In Count I of his Petition, Kaplafka asserts a claim for wrongful discharge in violation of public policy embodied in Field Regulation 1-2, Section 2.02, which requires members to be responsible for their own acts and not attempt to shift to others the burden of responsibility for executing or failing to execute a police duty. Petition ¶¶ 110-11. Kaplafka alleges that the OIG report identified that

9

the problem giving rise to the cheating resulted from Academy culture; instructors and staff "routinely" provided cadets with the questions and answers to the questions that were to appear on upcoming examinations and the PSP instructors and staff failed to modify examinations for successive Academy classes. *Id*. ¶¶ 105 & 108. Kaplafka argues that permitting his discharge to stand "would allow the Academy instructors and staff to improperly shift the burden of their violations and failures in the realm of cheating to Kaplafka, and other cadets or troopers like him, who had no intent to cheat, and did not do so" in violation of public policy incorporated in F.R. 1-2, Section 2.02. *Id*. ¶¶ 110-11. Kaplafka further contends that he lacks an adequate remedy at law and, therefore, asks this Court to issue a writ of mandamus to compel the PSP and the PSP Officers to withdraw Kaplafka's constructive discharge and permit him to rejoin the PSP as a state trooper. *Id*. ¶ 113.

Mandamus is an extraordinary remedy that compels the official performance of a ministerial act or a mandatory duty. *Nickson v. Pa. Bd. of Prob. & Parole*, 880 A.2d 21, 23 (Pa. Cmwlth. 2005); *Evans v. Pa. Bd. Prob. & Parole*, 820 A.2d 904, 914 (Pa. Cmwlth. 2003). This Court has previously explained:

> [I]n an action in mandamus *involving an administrative agency's exercise of discretion*, we may only direct the agency to perform the discretionary act; *we may not direct the agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken*. A writ of mandamus may be issued only where there is a *clear legal right in the [petitioner]*, a corresponding duty in the [respondent], and lack of any other appropriate and adequate remedy. The purpose of mandamus is not to establish legal rights, but to enforce those rights already established.

*Evans*, 820 A.2d at 914-15 (emphasis added).

10

Here, the relief sought by Kaplafka in his wrongful termination claim is to "compel [the PSP and PSP Officers] to withdraw the constructive discharge of [Petitioner] Kaplafka and permit him to rejoin the PSP as a state trooper." Petition ¶ 113. We cannot, however, order the reversal of Kaplafka's alleged constructive discharge and reinstate him as a trooper because we cannot direct the reversal of action already taken within the exercise of the administrative agency's discretion. *See Evans*, 820 A.2d at 915.

Section 205(f) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 65(f), provides:

> *All new* cadets and *troopers* shall serve a probationary period of eighteen months from the date of original enlistment, *during which time they may be dismissed by the Commissioner* for violations of rules and regulations, incompetency, and inefficiency without action of a court martial board or the right of appeal to a civil court.

(Emphasis added.) Kaplafka admits he was a probationary trooper at all relevant times. Petition ¶¶ 139 & 141-42. As plainly stated in Section 205(f), Kaplafka as a new trooper, serving during his probationary period, "may" be dismissed by the Commissioner for violations of rules and regulations *without* action of a court martial board or the right of appeal to a civil court. *See* 71 P.S. § 65(f). By use of the term "may" and by providing for no review of the Commission's decision to a hearing or otherwise, the legislature indicated its intention that "the decision to discharge has been *committed to the discretion of the employer*" as the employee has no property right in continued employment. *Pipkin v. Pa. State Police*, 693 A.2d 190, 193 (Pa. 1997) (emphasis added); *Graham v. Pa. State Police*, 634 A.2d 849, 851 (Pa. Cmwlth. 1993); *accord Sweeting v. Pa. State Police*, 503 A.2d 1126, 1128

11

(Pa. Cmwlth. 1986) (holding that probationary trooper does not have a property interest in continued employment). Because the decision to discharge a probationary trooper has been committed to the discretion of the Commissioner, this Court cannot "direct the retraction or reversal of action already taken," that is, we cannot order a reversal of Kaplafka's constructive discharge and a reinstatement of his employment as a probationary trooper in a mandamus action. *See Evans*, 820 A.2d at 915; *Hunt v. Pa. State Police*, 400 A.2d 907, 909 (Pa. Cmwlth. 1979) (explaining that once an agency has exercised its discretion, "a party who is dissatisfied with the result may not seek to compel a different result through mandamus; for mandamus does not lie to review a discretionary act, nor to compel a particular result in a process involving the exercise of discretion").

Nevertheless, Kaplafka argues that the mandamus remedy is broader than the PSP and the PSP Officers assert. Kaplafka's Brief at 20-21. Kaplafka contends that this Court can grant him mandamus relief because the courts will review the exercise of a government actor's discretion where it is arbitrary or fraudulently exercised or based upon a mistaken view *of the law* or to determine if constitutional rights have been violated.[5] *Id*. at 21-22. Kaplafka asserts that his claim for wrongful discharge shows that the PSP and the PSP Officers acted "arbitrarily and under *mistaken view of the law* in discharging him in violation of a *clear mandate of public policy*." *Id*. at 22-23 (emphasis added).

Kaplafka does not cite any law to support his assertion that he has a clear legal right to relief. Instead, Kaplafka relies on the PSP Field Regulation to support his assertion that it establishes a "clear mandate of public policy."

---

[5] We note that in Count II, Kaplafka asks for mandamus relief for the violation of his liberty interest in reputation but he fails to allege facts to support this claim. *See* discussion *infra* pp. 14-18.

12

Section 2.02 provides, in pertinent part:

> Members shall also be held responsible for the proper performance of all duties assigned to them; the appropriate use of delegated authority; and strict adherence to the rules, regulations, and directives promulgated by the Department. Ignorance of the rules, regulations, and directives shall not be considered an excuse or justification for any violation of such by a member. *Members shall be responsible for their acts and shall not attempt to shift the burden of responsibility for executing or failing to execute a lawful order or police duty. . . .*

PSP F.R. 1-2, § 2.02 (emphasis added). The purpose of the PSP Field Regulation is to "establish *policy and guidelines* regarding duty requirements for the conduct of members." F.R. 1-2 § 2.01 (emphasis added). The Field Regulation is, by its terms, "policy and guidelines" developed by the PSP, an executive agency, to govern the conduct of its members; therefore, it does not and cannot confer a legal right to probationary employees. *See Shore v. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017) (explaining that allegations made by inmate that the Department of Corrections failed to follow its regulations or internal policies cannot support a claim based on a vested right or duty); *see also Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034-35 (Pa. Cmwlth. 2014) (rejecting argument that policies and regulations adopted by agency create enforceable rights because "[a]dministrative regulations are not statutes or constitutional provisions"). Kaplafka has not established a clear legal right to relief necessary for his mandamus action for wrongful termination to proceed. For the foregoing reasons, we sustain the PSP and PSP Officers' preliminary objections as to Count I of the Petition asserting wrongful discharge. We now turn to Kaplafka's alternative claim.

### *Count II: Section 1983 Claim-Deprivation of Liberty Interest*

Alternatively, in Count II of his Petition, Kaplafka asserts a claim under 42 U.S.C. § 1983[6] for deprivation of his liberty interest in his reputation without due process as secured by the 14th Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1. Petition ¶¶ 116 & 126. Kaplafka asserts that the PSP and the PSP Officers created a "false and stigmatizing impression" of him as a "cheater, or dishonest person, in connection with his constructive termination" from the PSP thereby depriving his liberty interest in reputation and entitling him to "due process, in the form of, at a minimum, a name-clearing hearing." *Id*. ¶¶ 122, 127 & 130.

To state a claim under 42 U.S.C. § 1983, a petitioner "must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The 14th Amendment of the United States Constitution[7] requires due process where a state seeks to deprive a person of a life, liberty or property interest. *Pa. Game Comm'n v. Marich*, 666 A.2d 253, 255 (Pa. 1995). Reputational interests alone are insufficient to invoke federal due process protections. *R. v. Dep't of Pub. Welfare*, 636 A.2d 142, 149 (Pa. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). A petitioner can establish a deprivation of liberty interest in reputation if he makes a showing of a "reputational stigma plus deprivation of another protected right or

---

[6] To maintain an action under Section 1983, Kaplafka must allege that a person or persons deprived him of his constitutional rights while acting under color of state law. *Robles v. Pa. Dep't of Corr.*, 718 A.2d 882, 883 (Pa. Cmwlth. 1998). A Section 1983 action does not create any substantive rights, but merely serves as a vehicle or device by which a citizen is able to challenge conduct by a state official whom he claims has deprived him of his civil rights. *Id*.

[7] Section 1 of the 14th Amendment provides, in relevant part, "nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). The "stigma" is the creation and dissemination of a false and defamatory impression and the "plus" is the termination or the "alteration or extinguishment" of a right or status previously recognized by law. *Id.* The stigma-plus test has been applied in the public employment context to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest. *See Smith v. Engler* (E.D. Pa., No. 15-6542, filed June 14, 2018), slip op. at ___, 2018 WL 2984861, at *13 (citing *Hill*). The right that is accorded is an opportunity to refute the charges and clear one's name. *Id.* Although this Court has not addressed a name-clearing hearing as applicable relief, the United States Court of Appeals for the Third Circuit held that a public employee who is defamed in the course of being terminated or constructively discharged can bring a claim for a post-termination name-clearing hearing and satisfies the stigma-plus test even if, as a matter of state law, he lacks a property interest in the job he lost. *See Hill*, 455 F.3d at 238; *see also Graham v. Johnson*, 249 F. Supp. 2d 563, 568 (3d Cir. 2003) (concluding that a lack of a protectable property interest in employment with the Philadelphia Police Department does not preclude employee from bringing a claim for a post-termination name-clearing hearing).

However, in order to satisfy the stigma-plus test, Kaplafka must be able to establish the dissemination of the alleged false and defamatory impression. *See Hill*, 455 F.3d at 236 (explaining that to satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s) . . . were made publicly"). Kaplafka's allegations involve the PSP Officers' participation in meeting with him and questioning him about his role relating to the cheating with the junior class that

15

ultimately resulted in his constructive discharge. Kaplafka alleges that, based on a series of meetings and events involving each of the PSP Officers, except Lt. Col. Evanchick, he was "wrongly determined to be guilty of such 'cheating,'" and this determination created a "false and stigmatizing impression of him" as a "cheater" in connection with his constructive discharge. Petition ¶¶ 121-22. Though he alleges a false and stigmatizing impression was created, Kaplafka must also allege that the allegedly false and stigmatizing impression was published. *See Bishop v. Wood*, 426 U.S. 341, 348 (1976) (explaining that the reasons for the discharge must be made public to form a basis for the conclusion that the employee's "good name, reputation, honor, or integrity" was impaired to support a deprivation of liberty interest claim).

Kaplafka alleges that the "false and stigmatizing impression is memorialized *in the documents*" that now form part of his personnel file and are "likely" to be publicized to potential employers in response to any request made under the Right-to-Know Law.[8] Petition ¶¶ 72 & 122-25 (emphasis added). Turning to the documents, Kaplafka alleges that the PSP had "certain transcripts of interviews connected with the investigation into his conduct" and that he participated in a meeting on June 1, 2016 "in connection with his [d]isciplinary [a]ction [r]eport." Petition ¶¶ 60-61. Kaplafka further alleges he executed a resignation letter prepared by Sergeant Fry, which he provided to Captain Kosheba. *Id*. ¶¶ 69-71.

Accepting the facts as true, Kaplafka alleges that the documents in his personnel file contained a "false and stigmatizing impression" of him "as a cheater, or dishonest person, in connection with his constructive termination." Petition ¶¶ 122-23. However, Kaplafka has not alleged that this false and defamatory impression was disseminated. *See Bishop*, 426 U.S. at 348. Although Kaplafka cites

---

[8] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

16

to cases from other federal circuit courts to support his position,[9] our Third Circuit Court of Appeals[10] has explained that simply depositing material into an employee's personnel file does not meet the publicity requirement but rather there must be a dissemination of the contents of the personnel file to prospective employers, or others, to support a deprivation of liberty interest claim. *See Copeland v. Phila. Police Dep't*, 840 F.2d 1139, 1148 (3d Cir. 1988) (explaining that to succeed on a claim based on deprivation of liberty interest, the petitioner must establish that the reason for his termination was made public); *see also Cooley v. Pa. Hous. Fin.*

[9] *See, e.g., Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987) (explaining that if the plaintiff "is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities" and, therefore, the "presence of the charges in his personnel file coupled with a likelihood of harmful disclosure" are sufficient to meet the publication requirement); *see also Sciolino v. City of Newport News*, 480 F.3d 642, 650 (4th Cir.) *cert. denied*, 552 U.S. 1076 (2007) (holding that the plaintiff must allege a likelihood that prospective employers or the public at large will inspect the personnel file).

We further note that Kaplafka cites *Morgan v. Covington Township*, 648 F.3d 172, 181 (3d Cir. 2011), and asserts that the "Third Circuit cited *Brandt*, with apparent approval, for the proposition that the placement of a termination letter in the plaintiff's personnel file can constitute public disclosure or 'publicity' where the plaintiff can show the file is likely to be disclosed to prospective employers." Kaplafka's Brief at 39 n.16. We disagree as *Morgan* does not concern a personnel file and cites to *Brandt* only for the proposition that the plaintiff had to produce evidence to show an instance of publication. In *Morgan*, the Third Circuit affirmed the district court's finding that summary judgment was appropriate because Morgan failed to produce evidence to "identify any instance in which any defendant publicly accused him of a crime." *Morgan*, 648 F.3d at 175. In so concluding, the Third Circuit relied on *Hill*, 455 F.3d at 236, a later decided Third Circuit case, and stated that "Morgan would have to show that [the defendant] publicized a false, stigmatizing statement about him" to withstand summary judgment. *Morgan*, 648 F.3d at 181.

[10] We are not obligated to follow the decisions of federal district and intermediate appellate courts on issues of federal law as they are persuasive precedent. *Commonwealth v. Hicks*, 208 A.3d 916, 936 n.13 (Pa. 2019); *Hall v. Pa. Bd. of Prob. & Parole*, 851 A.2d 859, 863-65 (Pa. 2004); *West Chester Area Sch. Dist. v. A.M.*, 164 A.3d 620, 630 (Pa. Cmwlth. 2017). Though we are not bound to follow the Third Circuit Court of Appeals, "when possible, it is appropriate for a Pennsylvania appellate court to follow the Third Circuit's ruling on federal questions to which the U.S. Supreme Court has not yet provided a definitive answer." *West Chester Area Sch. Dist.*, 164 A.3d at 630.

*Agency*, 830 F.2d 469, 473-75 (3d Cir. 1987), *abrogated on other grounds by Foster v. Chesapeake Ins. Co.*, 933 F.2d 1139, 1148 (3d Cir. 1991) (holding that a termination letter placed in an employee's personnel file is not sufficient to support a deprivation of liberty interest claim because there must be an actual dissemination of the defamatory letter to prospective employers).

Kaplafka has made no allegations that there was publication to prospective employers, or others, that he was discharged for cheating. Though Kaplafka says that the allegations contained in his personnel file are "likely" to be publicized in response to prospective employers or to those making requests under the Right-to-Know Law, these allegations are speculative and do not establish actual harm to his reputation. *See Copeland*, 840 F.2d at 1148; *Cooley*, 830 F.2d at 473-75 (holding that termination letter placed in employee's personnel file is not sufficient to support deprivation of liberty interest claim as there must be actual publication). Therefore, we sustain the preliminary objections raised by the PSP and the PSP Officers to Count II of Kaplafka's Petition.

### *Counts III and IV: Tortious Interference with Contractual Relations and Prospective Relations*

Due to our disposition on Counts I and II, the only counts remaining for our consideration are Counts III and IV of Kaplafka's Petition, wherein he brings claims for tortious interference with contractual relations and prospective contractual relations, respectively, and asks this Court to "enter judgment in his favor" and award damages in excess of $50,000. Petition Wherefore Clauses on pp. 30 & 33. Kaplafka seeks money damages for unlawful injuries done in the employment context, and, therefore, these claims are in the nature of a trespass.

18

Section 761(a)(1)(v) of the Judicial Code provides that this Court does not have original jurisdiction over "actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity . . . ." 42 Pa.C.S. § 761(a)(1)(v). Our Supreme Court has held that actions in the nature of trespass (*i.e.*, tort actions) against the Commonwealth or its officers in their official capacity seeking compensation in the form of money damages are outside the original jurisdiction of this Court. *See Stackhouse v. Pa. State Police*, 832 A.2d 1004, 1006 (Pa. 2003) (affirming this Court's order transferring the case to the court of common pleas because the nature of the action was a tort action as provided by Section 761(a)(1)(v) seeking money damages to compensate the petitioner for injury done to her privacy and reputational interests and, therefore, was the type of action as to which the Commonwealth government formerly enjoyed sovereign immunity); *see also Fawber v. Cohen*, 532 A.2d 429, 433 (Pa. 1987); *accord Balshy v. Rank*, 490 A.2d 415 (Pa. 1985). Because we do not have original jurisdiction over the remaining claims asserted in Counts III and IV of the Petition, which are in the nature of a trespass and which seek money damages, we will not consider the preliminary objections raised by the PSP and the PSP Officers to these claims. As a result, we transfer Counts III and IV of the Petition, along with the remaining preliminary objections filed by the PSP and the PSP Officers to these counts, to the Dauphin County Court of Common Pleas for disposition.[11]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[11] Due to our disposition on the two preliminary objections addressed herein, we do not reach the preliminary objection that the Section 1983 claim cannot proceed against the PSP and the PSP Officers because they are not proper respondents.

19

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin M. Kaplafka Jr., :
                 Petitioner :
                  :
           v. :
                  :
Pennsylvania State Police and :
Lieutenant Colonel Robert Evanchick, :
Individually and in his capacity as :
Lieutenant Colonel of the Pennsylvania :
State Police and Colonel Tyree C. :
Blocker, Individually and in his :
capacity as Colonel of the Pennsylvania :
State Police and Lieutenant Colonel :
Lisa Christie Individually and in her :
capacity as Lieutenant Colonel of the :
Pennsylvania State Police and :
Lieutenant William M. Bowan, :
Individually and in his capacity as :
Lieutenant of the Pennsylvania State :
Police and Captain Margaret Dropinski, :
Individually and in her capacity as :
Captain of the Pennsylvania State Police :
and Captain Maurice Tomlinson, :
Individually and in his capacity as :
Captain of the Pennsylvania State :
Police and Captain Jeremy M. Richards, :
Individually and in his capacity as :
Captain of the Pennsylvania State :
Police, : No. 634 M.D. 2018
               Respondents :

## O R D E R

AND NOW, this 7th day of February, 2020, we sustain Petitioner's preliminary objections to Respondents' preliminary objections raising the affirmative defenses of statute of limitations and sovereign immunity to Petitioner's

Petition for Review (Petition), and we strike those preliminary objections of Respondents. We also sustain Respondents' preliminary objections to Counts I and II of the Petition and dismiss these counts. We transfer the remaining claims alleged in Counts III and IV of the Petition to the Dauphin County Court of Common Pleas, along with Respondents' preliminary objections to those counts, for disposition.

The Prothonotary shall certify a copy of the docket entries of the above matter to the Prothonotary of the Court of Common Pleas of Dauphin County.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge